Argued and submitted September 30, 2013, reversed and remanded July 23, petition for review denied October 23, 2014 (356 Or 401)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHRISTINA M. TODD,
aka Christina Marieann Todd,
*Defendant-Appellant.*

Multnomah County Circuit Court
100545057; A148667

332 P3d 887

Laura A. Frikert, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Matthew J. Lysne, Assistant Attorney in Charge, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Schuman, Senior Judge.

DUNCAN, P. J.

## DUNCAN, P. J.

In this criminal case, defendant represented herself at trial and was convicted of several prostitution-related crimes. On appeal, she argues that her convictions should be reversed because she did not knowingly and voluntarily waive her right to counsel.[1] We review for errors of law, *State v. Langley*, 351 Or 652, 666, 273 P3d 901 (2012), and we reverse and remand.

The procedural facts of this case are as follows. Defendant was charged by information with six counts of attempted prostitution under ORS 167.007 and ORS 161.405, and six counts of unlawful prostitution procurement activity under Portland City Code 14A.40.050. She was represented by a series of six court-appointed attorneys. All of the attorneys had difficulty working with defendant; four of them moved to withdraw as counsel because of a breakdown in the attorney-client relationship. Due to concerns about defendant's mental health, one of the attorneys had defendant evaluated to determine whether she was able to aid and assist in her own defense. On May 3, 2011, the date set for trial, defendant appeared in court with her sixth attorney, Crow, who had filed a motion to withdraw as defendant's attorney. The prosecutor explained to the court that defendant was "represented by Mr. Crow, and we have just been up to [the Criminal Procedure Court]" and "were sent back down here, and a substitution of attorney, or a release of attorney, was denied, Your Honor." Crow then informed the court that he was "prepared to proceed with trial" but that defendant "may have something she wants to say to Your Honor." Defendant then stated:

> "[Crow] hasn't subpoenaed my main witness. He said the Court wouldn't allow him to. He didn't know my criminal record when I came to talk to him yesterday. * * *

---

[1] Defendant also argues that the trial court erred by denying her motion for a continuance; by accepting inconsistent verdicts from the jury; and by failing to grant her motion for a judgment of acquittal on certain counts. In light of our remand, we need not address the court's denial of defendant's motion for a continuance or its acceptance of the jury's verdicts. We reject defendant's arguments regarding her motions for a judgment of acquittal because they raise unpreserved claims of error that do not constitute error apparent on the record. *See State v. Brown*, 310 Or 347, 355-56, 800 P2d 259 (1990) (setting forth the requirements for plain-error review).

"I am facing consecutive charges, and I don't feel that he has done anything to help me in this matter. I mean he didn't even know my criminal record the day before trial, and I don't want him to represent me."

At that point, the trial court explained to defendant that "what my job is, is to do trials for this month in misdemeanor cases," and that "procedural issues that lead up to those trials" are "resolved by the criminal procedure courts * * * so that when a case comes here they're ready for trial." The court explained that it had not seen Crow's motion to withdraw, because the motion had already been decided by a different judge. A colloquy ensued, which we quote at length:

"THE DEFENDANT:   I didn't request for [Crow] to get off my case. He requested to get off.

"THE COURT:   Okay.

"THE DEFENDANT:   And he told me that I wasn't going to be going to court today, that first thing in the morning he was going to get—he was dropping the case.

"THE COURT:   All right.

"THE DEFENDANT:   So I came ill prepared. I'm not dressed for court, I'm not ready for court, and—

"THE COURT:   Okay. So this is the time that we have set for trial. Your lawyer did a motion to no longer serve as your lawyer. The Court denied that motion so we are ready to proceed for trial.

"THE DEFENDANT:   So my other options—Do I have another option?

"THE COURT:   Well, you keep talking, and I'm trying to talk and so—

"THE DEFENDANT:   I'm sorry, Your Honor.

"THE COURT:   —only one of us can speak and the other one can listen, and that's the way we need to communicate.

"* * * * *

"THE COURT:   * * * So here's our situation. We are set for trial. You have a lawyer that's been appointed for you and so that's the current setup. If you are wishing to

proceed in a different manner, then you need to let me know that now.

"THE DEFENDANT: Yes, please.

"THE COURT: Okay. So go ahead. What is it that you're asking for?

"THE DEFENDANT: To—If you're forcing me to rep—in order for me to get a fair trial.

"THE COURT: I'm not forcing you to do anything.

"THE DEFENDANT: Okay. Now, if the Court is— To me, I don't feel safe with this attorney. I don't feel he's worked on my case, at all. We haven't even—We discussed it one time very briefly, and like I said, he hasn't subpoenaed even my main witness, and I want to testify and we haven't gone over any of my testimony. I would—don't want to be with—If I have to go by myself to get a fair trial, I would prefer to do that.

"THE COURT: *Is that what you're asking for? Because the choices here—We are set for trial today, and the Court's understanding is that this case originated back in May of 2010, so we are going to trial today.*

"THE DEFENDANT: So I haven't even gotten full discovery. No one's given me none of the evidence. I haven't gotten to see anything.

"THE COURT: [Defendant], my job is to act as the trial judge in this case. The Court, not this Judge, but the Court has made rulings on this case—

"THE DEFENDANT: Uh-huh.

"THE COURT: —that have brought it here today for trial, and that's what we're here for, and the Court this afternoon, the Criminal Procedure Court Judge, addressed the issue that your lawyer brought to the Court of wanting to withdraw as your lawyer, and the Criminal Procedure Court Judge denied that motion so we're not revisiting that issue.

"*So here's the choices. We're proceeding with trial. [Crow] is going to represent you or you will represent yourself.*

"THE DEFENDANT: *I'll represent myself.*

"THE COURT:  *So you are not wanting him to act as your lawyer; is that correct?*

"THE DEFENDANT:  *No. Correct.*

"THE COURT:  Okay. So there is currently a motion that has been filed by your lawyer. *Are you wanting him to represent you for purposes of that motion and then end his representation, or are you asking that the Court say, 'Okay, you're representing yourself for all purposes from here forward'? Which of those is it that you're wanting?*

"THE DEFENDANT:  *I don't really know. I don't even understand what you just said to me.*"

(Emphasis added.)

The trial court then clarified that Crow had filed a motion to dismiss based on multiplicity of charges. Defendant responded that she "thought I had three motions filed; one for a change of venue and for—against [prior bad acts] and one to * * * sever my cases. There should be four motions." Defendant, Crow, and the court then discussed what other motions had been previously filed by defendant's other attorneys, which resulted in the following exchange:

"THE DEFENDANT:  What about the other motions that were supposed to be? So they're just gone and then those don't count and I can't argue those because they disappeared?

"THE COURT:  We have not said that. *All I'm trying to do at this point is initially make the determination whether you want Mr. Crow to represent you any longer—*

"THE DEFENDANT:  *I don't want him to represent me, at all, for anything.*

"THE COURT:  —for any purpose whatsoever.

"THE DEFENDANT:  Any purpose whatsoever.

"THE COURT:  Okay. All right. So we will allow you to represent yourself, right? *You understand you have a right to be represented by a lawyer here, right?*

"THE DEFENDANT:  *I don't understand anything that you're saying, Your Honor. All I know is that he's not ready and he's lied to me already and I don't want him to be my attorney.*

"THE COURT:   Okay. Let's back up.

"THE DEFENDANT:   *I don't understand what you're saying; no, I don't.*

"THE COURT:   Okay. You understand that you're charged with one, two, three, four, five, six—six counts of attempted prostitution and six counts of prostitution procurement, correct? You understand those are the charges, right?

"THE DEFENDANT:   Correct.

"THE COURT:   Okay. You understand the gentleman next to you is Mr. Crow, and he is a lawyer. He's been appointed by the Court to represent you, right? Do you understand that?

"THE DEFENDANT:   Yes.

"THE COURT:   *And you understand that you are asking that he not represent you, correct?*

"THE DEFENDANT:   *What I'm asking for is a fair trial, and I believe that if he go—if he is my attorney during this trial, I will not get a fair trial.*

"THE COURT:   *Okay. So I will take that as a yes, that you're asking that he not represent you. So we will allow you to proceed forward as—in your own defense, representing yourself. Okay? And Mr. Crow will no longer have any obligation to represent you on any issue in this case. That's what you're asking for, correct?*

"THE DEFENDANT:   *Correct.*

"THE COURT:   All right. So that's the way we'll have it.

"So [the prosecutor] will represent the State, you will represent yourself, and we'll proceed forward on the case with our trial."

(Emphasis added.)

Defendant then expressed a desire to subpoena a witness and asked the court for a setover to allow her to prepare her case. The court denied the motion and disputed defendant's contention that the court was "forcing" her to go to trial. The court excused Crow from the proceeding

and stated, "No, we are not forcing you. We are providing a forum for you to have a trial on the charges that have been brought against you. So Mr. Crow will no longer be representing you."

The state indicated that it was ready to proceed with trial, and the court made the following finding on the record:

> "Okay. So I'm going to find, based on all that you've told me here so far, that you're making a knowing, voluntary, and intelligent right to waive the right to counsel here. *You understood that you had a right to counsel, you had counsel.* You're asking us not allow—to not allow him to represent you and so we're going to go ahead and find that, as we said, you've made a knowing, voluntary, intelligent waiver of your right to counsel."

(Emphasis added.)

Defendant proceeded to represent herself with regard to the pending motions, maintaining at various points that she was being forced to represent herself and was unable to understand what the prosecutor and trial court were talking about. The court denied defendant's pretrial motions and allowed the state to introduce evidence of defendant's previous convictions for prostitution.

Defendant then represented herself throughout the course of the jury trial. Notwithstanding the trial court's "leeway" and attempts to explain certain procedural aspects of the trial (such as the difference between direct examination and cross-examination), defendant often (including during the prosecutor's closing argument) repeated her concerns that she did not understand the procedure and did not want to be *pro se*. The court, each time, explained that it had already found that defendant had knowingly and voluntarily waived the right to counsel, and that it would not revisit the question.[2] The jury convicted defendant of two counts of

---

[2] Toward the end of trial, defendant presented a motion requesting appointed counsel, which the court denied. The court explained that it was denying that motion for

> "all of the reasons that we have given before, finding that you made a knowing, voluntary, intelligent right to your waiver of a right to counsel after having had at least six court-appointed lawyers prior to beginning the trial and having had Judge Fuchs deny your motion just before the trial started

attempted prostitution (Counts 1 and 11) and five counts of unlawful prostitution procurement activity (Counts 2, 4, 8, 10, and 12), and acquitted her of the remaining charges.

On appeal, defendant assigns error to the trial court's ruling that she knowingly and voluntarily waived the right to counsel. Defendant argues that she did not voluntarily choose to represent herself; she contends that she was forced to represent herself rather than accept counsel whom she reasonably believed was ill-prepared for trial. She further argues that, even assuming that her choice was voluntary, it was not knowingly made because the record does not demonstrate that she understood the risks of self-representation. In response, the state argues that defendant voluntarily waived her right to counsel by "consistently and repeatedly" insisting on representing herself. The state further argues that defendant's waiver was knowingly made because, although the trial court did not advise defendant of the risks of self-representation, the record establishes that defendant was aware of particular risks—including the charges against her, the penalty she faced, and the fact that she had not subpoenaed witnesses—and that she was aware of certain benefits counsel could provide—including access to discovery and knowledge of how to argue motions.

Under Article I, section 11, of the Oregon Constitution, a defendant has the right "to be heard by himself and counsel * * *."[3] A defendant may waive the right to be

---

for—I'm sorry, it wasn't your motion, your attorney's motion to withdraw, and that motion was denied by Judge Fuchs, the criminal procedure court judge because, for the record, in Multnomah County, that's how we proceed on such a motion.

"When we get that kind of motion it's decided by the criminal procedure court judge, so then you folks came back down after that motion was denied and then you informed the Court that you wanted to proceed without that lawyer, and we told you what the two choices were. You would have that lawyer represent you or you could proceed and represent yourself, and you chose to represent yourself after a full discussion of that issue, so that motion is denied."

In response to defendant's contention that she had only four lawyers on her case, the court explained that its "ruling on whether you knowingly, voluntarily, and intelligently waived your right to counsel * * * had nothing to do with whether you've had four lawyers or six lawyers so it's not a factor."

[3] Defendant also argues that she did not validly waive her right to counsel under the Sixth Amendment to the United States Constitution. Because we

represented by counsel in a criminal proceeding, but the waiver "must be voluntarily and intelligently made." *State v. Meyrick*, 313 Or 125, 132, 831 P2d 666 (1992). "Voluntarily" refers to whether the waiver is an intentional act that is not coerced, whereas "intelligently" refers to "a defendant's knowledge and understanding of the right to counsel." *Id.* at 132 n 8 (emphasis added). Whether there has been an intentional and knowing waiver of counsel "depend[s] on the particular circumstances of each case, including the defendant's age, education, experience, and mental capacity." *Id.* at 132.

In determining whether a defendant's waiver of counsel is "the intentional relinquishment or abandonment of a known right, [a] trial court should focus on what *the defendant* knows and understands." *Id.* (emphasis in original). In order to validly waive counsel, a defendant must not only know that he or she has the right to counsel, the defendant must understand the risks of self-representation. *Id.*

"A colloquy on the record between the court and the defendant wherein the court, in some fashion, explains the risks of self-representation is the preferred means of assuring that the defendant understand the risks of self-representation. The more relevant information that a trial court provides to a defendant about the right to counsel and about the dangers and disadvantages of self-representation, the more likely it will be that a defendant's decision to waive counsel is an intentional relinquishment or abandonment of a known right or privilege and that the record will so demonstrate."

*Id.* at 133. However, "Article I, section 11, does not require a catechism by the trial court." *Id.* at 134. "The failure of a trial court to impart a particular piece of information to a defendant will not, of itself, require reversal of a conviction if the record as a whole shows that the defendant knew of his or her right to counsel and that the waiver of counsel was an intentional relinquishment or abandonment of that known right." *Id.* "Thus, *Meyrick* does not require that a defendant

---

conclude that defendant did not validly waive her Article I, section 11, right to counsel, we do not reach that argument or further discuss the Sixth Amendment.

know and completely appreciate every potential risk of self-representation in his or her case. Nor does *Meyrick* prescribe particular risks that a defendant must understand." *State v. Jackson*, 172 Or App 414, 423, 19 P3d 925 (2001). "Conversely, however, a defendant's abstract knowledge that there may be risks and disadvantages of self-representation, without any appreciation of what those risks might be, is insufficient." *Id.* "'Understanding' under *Meyrick* means that a defendant, in the totality of the circumstances, substantially appreciates the material risks of self-representation in his or her case." *Id.*

Accordingly, we have held that evidence of a defendant's general awareness that a lawyer might be helpful is not sufficient to establish a knowing waiver of counsel. *See, e.g., State v. Erb*, 256 Or App 416, 423, 300 P3d 270 (2013) (defendant's written waiver of counsel, which stated that she was "aware of the help a lawyer might be to me," was insufficient to establish that the defendant was aware of the risks of self-representation); *State v. Reed*, 247 Or App 155, 161-62, 268 P3d 756 (2011) (evidence that defendant had appeared at prior probation violation hearings, both with and without counsel, was insufficient to show a knowing waiver of counsel); *State v. Massey*, 160 Or App 197, 199, 981 P2d 352 (1999) (evidence that defendant had worked as a paralegal, had been involved in several civil lawsuits before the commencement of his criminal case, and had been represented by several different lawyers in the criminal case was insufficient to establish that defendant understood the risks of proceeding *pro se*); *State v. Richardson*, 159 Or App 592, 600-01, 978 P2d 435, *rev den*, 329 Or 479 (1999) (trial court's statement that "a lawyer may be able to assist you in challenging the indictment" was insufficient under *Meyrick*); *State v. Chambers*, 150 Or App 336, 339, 946 P2d 300 (1997) (instructing a *pro se* defendant as to the importance of subpoenaing witnesses and that he should "get some help from an attorney or somebody on how to make sure you get that done" was inadequate to assure that defendant was aware of the risks of self-representation).

Similarly, we have held that a trial court's statement to a defendant that she "may be at a disadvantage

without a lawyer" and the defendant's acknowledgement that she "may be" did not demonstrate that the defendant adequately understood the risks of self-representation. *Erb*, 256 Or App at 423; *see also State v. Culver*, 198 Or App 267, 270-71, 108 P3d 104 (2005) (colloquy in which the trial court asked the defendant whether he understood that he would be "at a disadvantage" if he represented himself was insufficient under *Meyrick*); *State v. Meyer*, 116 Or App 80, 84, 840 P2d 1357 (1992) (trial court's warning that jury trials are "kinda tricky" did not adequately inform defendant of the risks of self-representation).

In this case, the trial court did not speak to defendant about the risks of self-representation. As recounted above, the court focused on whether defendant wanted to be represented by Crow or proceed *pro se.* The colloquy between the court and defendant was focused entirely on which of those options defendant wanted. The court asked defendant, "You understand you have a right to be represented by a lawyer here, right?" When defendant responded that she did not "understand anything that you're saying, Your Honor," the court went over the charges with defendant ("You understand that you're charged with * * * six counts of attempted prostitution and six counts of prostitution procurement, correct?"), and asked defendant whether she understood that "the gentleman next to you is Mr. Crow, and he is a lawyer." The court then asked defendant, "And you understand that you are asking that he not represent you, correct?" When defendant then reiterated that she did not believe she would get a fair trial with Crow as her attorney, the court replied, "Okay. So I will take that as a yes, that you're asking that he not represent you," and released Crow from his duty to represent defendant. At no point during that colloquy—or at any point before defendant purportedly waived her right to counsel—did the trial court discuss the risks of self-representation or determine whether defendant understood those risks. That failure to even mention any of the risks of self-representation, or put on the record any facts indicating that defendant understood the risks, is akin to the circumstances that we have described as *prima facie* error. *E.g., Erb*, 256 Or App at 423 (holding that the trial court had committed *prima facie* error where "[t]he trial court's

comment regarding the disadvantages of self-representation was extremely general" and "[t]he court did not offer any warnings regarding the specific risks of self-representation, nor did it ask defendant any questions that would have revealed the extent of defendant's knowledge of those risks").

Nonetheless, the state argues that the record "shows that before [defendant] waived her right to counsel, she was aware of the following risks":

"• that she had been charged with six counts of attempted prostitution and six counts of prostitution procurement;

"• that she faced 'six months' on one of the charges; and

"• that she had the right to call witnesses, and that she had not subpoenaed a witness."

(Footnotes and record citations omitted.)

Furthermore, the state argues, defendant was aware of the following "benefits counsel could provide":

"• she knew that she intended to be a primary witness and would want to testify, but that she had not discussed her testimony with counsel yet;

"• that defense counsel had access to discovery and evidence; and

"• that she had several (at least three) pretrial motions for the court, including a motion to change venue, and that she was 'not an attorney' and '[did not] know how to argue' such a motion."

(Footnotes and record citations omitted.)

We are not persuaded that defendant's awareness of those risks is sufficient to demonstrate that she understood the risks *inherent in self-representation*. Awareness of the first two risks that the state identifies—the charges against her and the potential penalty—might suggest that defendant understood, in an abstract sense, the consequences of trial, but it does not demonstrate that she understood any of the added risk inherent in proceeding without counsel. Nor is defendant's awareness of the difficulty in securing witness testimony sufficient to demonstrate that she understood the danger of self-representation. In fact, we have stated that

even a trial court's explicit instruction to a *pro se* defendant as to the importance of subpoenaing witnesses, and warning that he should "get some help from an attorney or somebody on how to make sure you get that done," would have been inadequate to convey the "dangers and disadvantages of self-representation." *Chambers*, 150 Or App at 340.

Defendant's awareness of certain benefits of counsel are, on this record, also insufficient to demonstrate that she understood the risks inherent in self-representation. The first two benefits of counsel identified by the state are services that, in defendant's view, her appointed attorney had not provided. Defendant's decision to proceed without counsel was based, in large part, on her belief that Crow was unprepared because he had refused to subpoena her witness and had not spoken with her about her testimony. Thus, even though she was aware that attorneys can provide those benefits, it does not follow on this record that she understood how self-representation—as opposed to keeping Crow as her attorney—posed inherent risk.

Finally, defendant's awareness that attorneys, unlike herself, would know how to argue motions is not, on this record, sufficient to demonstrate the level of awareness of the risk of self-representation that is required for a knowing waiver of the right to counsel. As explained above, in the absence of a sufficient warning about the dangers of self-representation or specific information about the benefits of counsel, we have consistently rejected the argument that a generalized understanding of a lawyer's services demonstrates knowledge of the risks of self-representation. *See Erb*, 256 Or App at 423.

In sum, where a trial court puts a defendant to the type of choice that was offered here—*i.e.*, keep your attorney or proceed *pro se*—the court must determine that the defendant understands the risks of self-representation, to ensure that the waiver of the right to counsel is an intelligent relinquishment of that right. Because the trial court did not engage in a colloquy with defendant about those risks, and the record does not otherwise establish that defendant sufficiently understood them, we must reverse and remand. Although the record reflects that the trial court

was extremely patient with defendant, who made repeated outbursts during trial, that patience does not remedy the prejudice that resulted from proceeding to trial without an attorney.[4] Accordingly, we reverse defendant's convictions and remand for further proceedings.[5]

Reversed and remanded.

---

[4] The state has not suggested that the court's ruling on the waiver of counsel, if error, was harmless. Suffice it to say that, given the nature of the evidence, the arguments presented at trial, and the conduct of the trial generally, we are unable to tell what the outcome of defendant's case would have been if she had been represented by counsel. *See Erb*, 256 Or App at 427 (applying the test for harmless error in a similar context).

[5] Because we remand on the ground that the state failed to establish that defendant's waiver was made knowingly, we do not address her contention that the waiver was not voluntary and that "the trial court's 'choice' to defendant to proceed to trial with court-appointed counsel or represent herself was impermissible" under *Langley*, 351 Or 662.