Submitted May 29, 2015, remanded for resentencing, otherwise affirmed
January 25, 2017

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**SCOT SUTHERLAND HAINES,**
*Defendant-Appellant.*

Clackamas County Circuit Court
CR1201901; A155001

388 P3d 365

Peter Gartlan, Chief Defender, and Andrew D. Robinson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Matthew J. Lysne, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

## ORTEGA, P. J.

Defendant appeals his judgment of conviction for five counts of identity theft, ORS 165.800. For part of his sentencing hearing, defendant was not represented by counsel, and he argues that his waiver of his right to counsel was invalid because it was not voluntarily and knowingly made, thus violating Article I, section 11, of the Oregon Constitution.[1] Reviewing the validity of defendant's waiver of the right to counsel as a legal question in light of the circumstances of his particular case, *State v. Erb*, 256 Or App 416, 420, 300 P3d 270 (2013), we conclude that the record is insufficient to show that defendant's waiver of counsel was made with awareness of the risks of doing so. We remand for resentencing on that basis.

The circumstances of defendant's lack of attorney representation at the sentencing hearing are as follows. In July 2013, defendant was represented during a bench trial in which he was convicted of the five identity theft counts at issue in this appeal. The following month, defendant appeared at his sentencing hearing with his attorney. Two other cases were at issue: one was in the same circuit court, Clackamas County, for which other charges of identity theft had been filed and were pending (the other Clackamas County case),[2] and a second was in Multnomah County Circuit Court, in which charges against defendant were yet to be filed. Defendant and the state were in discussions contemplating a global plea for all three cases. Defendant, however, insisted that his sentence should include an alternative incarceration program (AIP); he believed that treatment for his methamphetamine addiction was of utmost importance.[3] The prosecutor told the court that the state would

---

[1] In defendant's other assignment of error, he requests that we review as plain error the sentencing court's imposition of separate convictions because the record was insufficient to establish that there were separate victims of the identity theft counts. Our disposition of the first assignment obviates the need to address that assignment.

[2] Case Number CR1300513.

[3] Defendant desired the AIP at Powder River Correctional Facility, which offers residential drug treatment. Generally,

"AIPs are prison programs that the Department of Corrections (DOC) offers to select offenders. As DOC rules explain, an AIP is a 'highly structured corrections program that includes intensive interventions, rigorous personal

not agree to anything other than 96 months' imprisonment without AIP. Defendant's counsel, wanting an assurance that Multnomah County would not pursue its case against defendant, suggested that defendant enter a plea to the other Clackamas County case and that the court postpone sentencing. The prosecutor responded that the state wanted the court to sentence defendant on his convictions that day.

The court sided with the prosecutor, stating:

"I can only move forward. * * * I'm trying to work in a way that's going to move this matter forward, * * * the State is entitled.

"We've set the sentencing today and if [the state] is saying, 'By golly, we're going to do sentencing,' we'll do the sentencing. I don't know if [the state is] going to get [its] plea in [its] second case if that happens and I'm not sure that's really where we want to go, but like I said, that's not in [the state's] control.

"That's not in my control. I can't make him plea. So all I can do is sentence him on the first case today. I'm * * * willing and able to do that."

The trial court directed the parties to take a break so that they could discuss further the possibility of reaching a plea agreement for all of the cases against defendant. The parties did so and returned to the court, where the prosecutor announced that a plea deal had been reached: Multnomah County would not pursue charges against defendant, defendant would enter a plea on the other Clackamas County case, and the sentence for both Clackamas County cases would be 96 months' imprisonment without AIP. The prosecutor stated that defendant was eligible for drug treatment even if he did not receive AIP. At that point, defendant spoke up:

"I'm confused. Your honor, * * * I've been to prison before. [The] program that I want to get into is the program out at Powder River. It's an intensive inpatient drug treatment

responsibility and accountability, physical labor, and service to the community.' OAR 291-062-0110(1). AIPs have two phases: (1) a 180-day residential phase, and (2) a 90-day 'non-prison/transitional leave' phase. Offenders who complete a full AIP are eligible for sentence reductions. Oregon Department of Corrections, Issue Brief - 2013, *Alternative Incarceration Programs* (May 23, 2013)."

*State v. Cross*, 264 Or App 205, 206 n 1, 331 P3d 1073, *rev den*, 356 Or 400 (2014).

program. It's 14 hours a day, seven days a week for approximately six months. I did a drug treatment program when I went to prison before. It's like—they call it drug treatment light. It was held at Columbia River. It wasn't all that different than what I would say outpatient drug treatment is on the streets. The only way to get into [the Powder River] program is if the Court provides me AIP eligibility. And I believe that's my best chance for success."

After the parties discussed drug treatment with and without AIP, defendant agreed to the plea deal but, after reiterating his desire for the Powder River AIP program, changed his mind and said that there would be no deal. The prosecutor did not budge on the state's position that defendant serve 96 months without AIP.

The following exchange occurred when defendant again addressed the court directly:

"[DEFENDANT]: I know I probably threw a major wrench in the engine today, Your Honor. I would like to ask for different counsel. My lawyer smells like she drank about a half a bottle of vodka over lunch.

"[DEFENSE COUNSEL]: Oh, hogwash.

"* * * * *

"[THE COURT]: —but I don't think [defense counsel] needs to start defending herself. You say what you want to say.

"[DEFENSE COUNSEL]: I have no problem with—with withdrawing from this case, Your Honor, given his statement today, also given the difficulties I've had and all of my staff have had in dealing with his issues and his change of mind and his—his other problems.

"So I think it's appropriate for me to withdraw and I'll file a motion to that effect. He's had us jump through so many hoops that, you know—

"[THE COURT]: And I'm taking it that you are no longer going to plead in the second case based on this request?

"[DEFENDANT]: I'll plead, Your Honor, I just—talk—I'll represent myself. I'm sorry that—I don't know what else to do, all right? I've got a lawyer who I've had a great amount of difficulty with. I have done everything

I could to try to support the efforts of our defense team. There has been some glaring communication problems over the last year. And I'm not just saying this to—

"THE COURT: Well—

"[DEFENDANT]: —slip out of the noose. She smells like alcohol, Judge—

"* * * * *

"THE COURT: I will tell you that if your decision is to terminate your counsel, which you're entitled to do, that I will sentence you on the first case today. I will not sentence you on the second case today. If you want to take a plea, do that, but I don't have to sentence you today. I can set sentencing over. I can set it in my court or I can set it in somebody else's court, 'cause I'm just taking a plea.

"[DEFENDANT]: Your Honor, I'm—as a judge, I think you're outstanding. I have got a very good feel for you and I have no problem with you sentencing me and I would to be sentenced by you. I discussed quite a bit with my attorney about this sentencing over the last few days and nothing has gone the way that it was supposed to have gone. I'm obviously in a lot of trouble. I'm fighting for my life or at least a large chunk of it and I don't feel that I'm being adequately represented by her. And I figure if I don't speak up now, I'm not going to ever—you know.

"THE COURT: Do you want to request another attorney?

"[DEFENDANT]: Your Honor, yes, I would very much like to request a different lawyer, please.

"[PROSECUTOR]: Your Honor, motions to withdraw are heard in front of Judge Herndon.

"THE COURT: I know. I know, but I also can't force him to continue with (indiscernible) with counsel that—

"[DEFENSE COUNSEL]: And I don't think I can be forced to represent him—

"* * * * *

"THE COURT: —I think [defense counsel] is now in an ethical dilemma and she can't proceed any further. So all I can do right now and all I'm going to do right now is I'm going to sentence him on the first case. We're going to

have to set the plea and the sentence over on the second case, because I have reservations about him pleaing [*sic*] without representation when he's asking for a new attorney.

"* * * * *

"THE COURT: * * * [Defense counsel], if you'd like to take a seat in the jury box or step away from counsel table or whatever you need to do. As far as this Court's concerned, you know, your client has asked you to be dismissed and so I'm not expecting you to do anything further at this point.

"[DEFENSE COUNSEL]: All right. Thank you, Your Honor."

The trial court then asked defendant if he understood that his lawyer was withdrawing, that he would be sentenced on the five counts of identity theft of which he had been convicted, and that he would be appointed counsel for the other Clackamas County Case, which would be heard at a later date. Defendant affirmed that he understood and asked if he and his mother could make statements to the court before it sentenced him. The court heard those statements, their crux being that defendant's crimes were the result of his longstanding methamphetamine addiction. (Defendant also expressed remorse and explained some personal circumstances.) The court sentenced defendant, imposing a total of 80 months' imprisonment with AIP.

We begin our analysis with the state's contention that defendant's claimed error was unpreserved because he did not object after his attorney stepped away from counsel's table.[4] Regardless of whether defendant preserved his claim of error, the Supreme Court has provided a limited exception to the preservation requirement in these circumstances. "A defendant whose waiver of counsel is accepted without first being apprised of the risks of self representation cannot be expected to object to acceptance of that waiver on the ground that he or she was not apprised of those risks." *State v. Cole*, 323 Or 30, 36, 912 P2d 907 (1996); *see also State v. Morrow*, 192 Or App 441, 444-45, 86 P3d 70, *rev den*, 337 Or

---

[4] In defendant's view, his two requests for a new attorney preserved his claim of error. Defendant's requests, however, were made prior to the court's decision to sentence defendant on his convictions in the first case and set over the other Clackamas County case.

282 (2004) ("When a defendant who appeared *pro se* at trial contends, for the first time on appeal, that his or her *waiver of counsel* was invalid, that argument is preserved without the need for an objection at trial."). Here, defendant was not apprised of the risks of self-representation and is therefore excused from our preservation requirements. Accordingly, we proceed to the merits of defendant's appeal.

Defendant asserts that his waiver of his right to counsel violated Article I, section 11, because it was not made knowingly.[5] The constitutional right to counsel may be waived, "but the waiver must be voluntarily and knowingly made." *State v. Easter*, 241 Or App 574, 583, 249 P3d 991 (2011) (citing *State v. Meyrick*, 313 Or 125, 132, 831 P2d 666 (1992)). The right to counsel exists for "critical stages" of a criminal proceeding, including sentencing. *Id.* ("'[C]ounsel cannot be excluded from any stage of the criminal prosecution at which a defendant is to be "heard," including the sentencing stage, whether this is wholly performed by the judge or shared with non-judicial persons.'" (Quoting *State ex rel Russell v. Jones*, 293 Or 312, 315, 647 P2d 904 (1982).)); *Russell*, 293 Or at 315 ("The term 'criminal prosecution' includes sentencing, a stage at which a judicial decision affecting a defendant's future liberty is made. Obviously,

---

[5] Article I, section 11, provides, in part, that, "[i]n all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel[.]"

Defendant also asserts that his waiver violated ORS 135.045(1)(c), which provides that, if a "defendant wishes to waive counsel, the court shall determine whether the defendant had made a knowing and voluntary waiver of counsel." Ordinarily, if both subconstitutional and constitutional arguments are raised, we "begin our analysis by determining whether a case may be disposed of on subconstitutional grounds." *State v. Phillips*, 235 Or App 646, 651, 234 P3d 1030, *modified on recons*, 236 Or App 465, 236 P3d 789 (2010). However, we have noted that "[n]either the Oregon Supreme Court nor this court have previously interpreted the current text of [ORS 135.045], which appears to impose on the trial court obligations congruent to those imposed under the state and federal constitutions when a defendant wishes to waive the right to counsel." *Id.* In *Phillips*, because of the "apparent congruence and the absence of any argument by defendant regarding an interpretation of the statute under which he would be provided with broader protection or more complete relief than that provided by the constitutional provisions," we considered the defendant's constitutional arguments and "expressed no further opinion on the interpretation of ORS 135.045." *Id.* We do the same here.

We also note that defendant argues that his waiver was made involuntarily. We need not address that argument because we conclude that defendant's waiver was not made knowingly.

then, a defendant is entitled 'to be heard by himself and counsel' at sentencing." (Quoting Article I, section 11.)).

"To knowingly waive the right to counsel, a defendant must be aware of the right to counsel and also understand the risks inherent in self-representation." *Easter*, 241 Or App at 584 (citing *Meyrick*, 313 Or at 132-33). An on-the-record colloquy is the preferred method of establishing that a defendant knowingly waived the right to counsel. "The obligation rests with the court to determine whether the waiver of counsel is made knowingly." *Id.* at 582. The "failure to even mention any of the risks of self-representation, or put on the record any facts indicating that defendant understood the risks, is akin to the circumstances that we have described as *prima facie* error." *State v. Todd*, 264 Or App 370, 380, 332 P3d 887, *rev den*, 356 Or 401 (2014) (citing *Erb*, 256 Or App at 423).

Under the totality of the circumstances, however, if the record reflects that the defendant understood the risks of proceeding without counsel—that is, a defendant "substantially appreciates the material risks of self-representation in his or her case"—we will affirm a trial court's acceptance of a defendant's waiver. *State v. Jackson*, 172 Or App 414, 423, 19 P3d 925 (2001). The circumstances that can support a determination that a defendant understood the risks of self-representation include a defendant's prior experience with the criminal justice system, *State v. Reynolds*, 224 Or App 411, 419, 198 P3d 432 (2008), *rev den*, 346 Or 158 (2009); a defendant's firsthand experience of "some of the basic things that an attorney could do," *id.*; and a defendant's request for retained counsel, *State v. Brown*, 141 Or App 156, 163, 917 P2d 527, *rev den*, 323 Or 691 (1996). Yet, a "defendant's abstract knowledge that there may be risks or disadvantages of self-representation, without any appreciation of what those risks may be, is insufficient." *Jackson*, 172 Or App at 423.

Here, the state concedes that the court failed to inform defendant of the risks of self-representation but argues that defendant nevertheless understood the risks of self-representation during the sentencing stage of his

criminal trial because defendant knew that "there were undesirable sentencing decisions and outcomes that an attorney would be better prepared to help avoid." The state notes that defendant had experience with the criminal justice system prior to his sentencing and points to, in particular, defendant's statements regarding his prior sentence in 2008. In the state's view, defendant's criminal justice experience and his acceptance of counsel for the other Clackamas County case overcomes the trial court's *prima facie* error of failing to warn defendant of the risks of self-representation or determine that defendant understood those risks.

For that proposition, the state relies on *Easter*. In that case, we concluded that, under the totality of the circumstances, the record reflected that the defendant understood the risks of proceeding without counsel when he waived that right for the closing portions of his trial. 241 Or App at 584. The defendant in that case had had nine prior convictions, and at least one of them had gone to trial. *Id*. Moreover, we noted that it was relevant that the defendant had the opportunity to observe his attorney's conduct up until the point that he waived his right to counsel. *Id*. at 584-85.

Two of the circumstances in *Easter* distinguish that case from this one. First, in *Easter*, we noted that the court "warned defendant that proceeding without counsel was a 'bad idea.'" *Id*. at 585. Second, after the trial court specifically warned the defendant that, "in light of the fact that defendant had no legal training, he likely was not aware of the legal contours that he would have to navigate during closing argument," the court offered, and the defendant accepted, to retain the defendant's attorney as a legal advisor and to allow the attorney to remain in the court room. *Id*. Here, the trial court neither gave any kind of warning nor suggested that defendant's counsel could remain during sentencing in an advisory role. Indeed, the judge stated, after declaring that he would sentence defendant, that he had "reservations" about defendant "pleaing [*sic*] [the other Clackamas County case] without representation when [defendant] is asking for a new attorney," implying that he had no such reservations regarding proceeding to sentence defendant on the case that had already been tried.

Moreover, in our recent decision, *State v. Guerrero*, 277 Or App 837, 850, 373 P3d 1127 (2016), we concluded that the defendant's familiarity with the criminal justice system alone was insufficient to support a finding that the defendant "adequately understood the risks of self-representation." We noted that many "defendants are repeat offenders, and we have previously recognized that more than a history of criminal offenses is necessary to establish a basis for a knowing waiver of counsel, even for a defendant with prior valid waivers." *Id.* at 849 n 7. In this instance, the record does not indicate that defendant's 2008 experience with sentencing after a plea deal with the state provided him with the experience of viewing the benefits that counsel could provide in a case such as this in which sentencing was imposed for crime for which he was convicted after a bench trial.

The state also contends that defendant's choice to retain his right to counsel for the other Clackamas County case supports an inference that he understood the risks of self-representation. *See Easter*, 241 Or App at 584 ("[A] defendant's request for retained counsel supports an inference that the defendant understands the risks of self-representation."). We disagree. Although the request for counsel for the other Clackamas County case indicates that defendant understood the need for a lawyer to assist him with a plea or to try those charges, or the general importance of attorney representation, it does not necessarily follow that defendant understood that there were risks of self-representation specific to the sentencing stage of his criminal proceeding. Indeed, after the judge informed defendant that he would appoint counsel for the other Clackamas County case and that he would proceed with sentencing, defendant's response to the state's sentencing recommendation was merely to provide personal statements from him and his mother. There is nothing in the record to indicate that defendant understood that an attorney could provide arguments to the court that went beyond testimony imploring the court to take into consideration defendant's remorse, personal circumstances, or desire for drug rehabilitation.

Accordingly, we conclude that the record does not reflect that defendant's waiver of his right to counsel during his sentencing was made with an understanding of the risks

of self-representation and, thus, were made knowingly. The trial court never provided any colloquy about the risks of self-representation. The court stressed the importance of counsel for defendant's other Clackamas County case without any indication that counsel would similarly benefit him at his sentencing. Defendant's familiarity with the court system and desire for counsel in another proceeding, although sufficient to indicate that defendant may have had a general understanding of the risks of self-representation, were insufficient to overcome the trial court's failure to warn defendant that self-representation for defendant's *sentencing proceeding* would be risky or to establish that defendant understood those risks.

The state argues that, nevertheless, any error by the trial court was harmless. The Supreme Court has stated that such an error is not harmless if, on review, we are "unable to determine" what the outcome would have been if the defendant had been represented by counsel. *State v. Cole*, 323 Or 30, 36, 912 P2d 907 (1996). We have characterized the court's "we can't tell" principle as "transcendent." *State v. Richardson*, 159 Or App 592, 602-03, 978 P2d 435, *rev den*, 329 Or 479 (1999) (in concluding that a defendant's unknowing waiver of counsel was not harmless, stating that "like the Supreme Court in *Cole*, given the breadth of the issues implicated by defendant's motions, including the motions to quash and the motion for a bill of particulars, we cannot say with confidence that the development and disposition of the challenges to the indictment would not have been different if defendant had been represented by counsel").

Here, the state asserts that any sentencing error was harmless because defendant would not have received a more favorable sentence had he continued to be represented by an attorney. That is, the state asserts that, because defendant "received the favorable type of sentence that he wanted, within the range of expected sentences, and with a provision making him eligible for AIP," his self-representation made no difference to his sentence and defendant has not advanced "any persuasive argument" to suggest otherwise. The record, however, does not support the state's assertion that attorney representation of defendant would not have made any difference. Under the standard articulated in

*Cole,* reiterated in *Richardson,* we conclude that, because there were outstanding sentencing issues—both legal and discretionary—we are unable to determine what the outcome would have been had defendant been represented by counsel. Defendant did not have the benefit of an attorney arguing the merits of what defendant, or his mother, said to the court. Nor did defendant have the benefit of an attorney answering the arguments the state raised or raising other arguments advancing defendant's interests for the entire sentencing proceeding. Accordingly, the court's error was not harmless.

Remanded for resentencing; otherwise affirmed.