EGAN, C. J.
*432 *788 Defendant appeals a judgment of conviction for attempted murder, ORS 163.115 and ORS 161.405, first-degree assault, ORS 163.185, and second-degree assault, ORS 163.175. He asserts that the trial court erred in concluding that he validly waived his right to counsel. We agree, and, therefore, we reverse and remand.
The relevant facts are procedural and are not in dispute. We recount them in some detail because they are important for our analysis. Defendant was indicted in March 2013. He subsequently had three court-appointed attorneys. His first attorney withdrew after she was appointed to be a circuit court judge. Defendant's second attorney worked in the same office as the first. Defendant believed that his first attorney had lied to him and waived his speedy trial rights without his knowledge and consent, and, because he did not trust the attorneys in that office, he requested a different attorney. At a hearing in October 2013, the trial court agreed to appoint another attorney to represent defendant, stating, in part:
"*** [W]e're going to appoint a new attorney to represent you, Mr. Borba.
"* * * * *
"*** And I only give one. Okay?
"* * * * *
"*** So if you want another attorney after this one, you're going to have to hire your own, absent some exceptional circumstance. So there may be a legitimate conflict with your next attorney, and if there is, we'll appoint you an additional one. But if there's not a legitimate conflict, then you're going to have to hire your own if you want another one. Okay?"
The trial court canceled the trial date that was scheduled for February 2014; trial was rescheduled to take place in late April 2014, and a third attorney was appointed for defendant.
Defendant, who remained in custody while awaiting trial, sent to the court an Inmate Request Form dated *789 April 2, 2014, which stated, "My Attorney Zach Light is fired." As a result of that communication, the court held a hearing on April 4. Defendant told the trial court that "counsel has been ineffective and I have a private lawyer going to be coming in. So for now, I'm going to represent myself" until the private lawyer is working on the case. Defendant expressed concern regarding a violation of his speedy trial rights and "waiver" of trial dates, and also stated that he did not have all of his discovery and court records.
The trial court asked who defendant's private lawyer was and defendant responded that his name was Kolkey. The prosecutor explained to the court that it was her understanding that Kolkey is a federal defense attorney, that Kolkey was not yet retained, and that he was waiting to be paid a retainer. The state asked the trial court not to release defendant's appointed counsel from the case until there was proof that defendant had retained another attorney, and informed the court that trial was scheduled to begin in two weeks. Defense counsel told the court that his investigator had completed her investigation and that he was ready to go to trial. Defendant himself told the court that he was not sure that he was ready for trial.
The trial court denied defendant's pro se motion to remove his attorney from the case. The court stated:
"You're going to trial. You certainly, you're not going to get another public defender. You've gone through three of them now; you're not getting another one.
"You're not getting any other defense counsel from-on the state's end of it, because you've had more than enough. I usually only give two. Some judges don't give more than one. But you've now had three. That's it. I don't care what the *433 nature of the charges are; you can't just keep going from one to the other to the other.
"* * * * *
"*** You have your motion [to dismiss] on 4-9, but we are leaving that trial date on and I'm not releasing Mr. Light from this case. He will be sitting with you in trial. You certainly can represent yourself, but he will be sitting with you in trial advising you.
*790 "* * * * *
"*** [Y]ou don't have to communicate with him if you don't want to, but he will be there to assert any kind of what-he will be advising you on trial strategy, trial techniques, things like that, or any kind of legal issues or matters you may have.
"So right now, I'm going to deny-I'm not going to let Mr. Light off the case, so I'm going to deny your request to fire him. I'm not going to let you represent yourself unless you really-you have to waive that, you have to know what you're doing. I mean these are serious charges, so I guess you can represent yourself if you'd like, but I don't think you do want to represent yourself.
"Your only options are you hire this new guy[.]
"* * * * *
"*** Kolkey. You get Kolkey on board and Kolkey will have a certain period of time in which to put his case together. But I am not going to keep continuing this thing out and out and out and out.
"* * * * *
"*** [Y]ou're going to trial on that day. Unless *** you come up with the money to hire this Kolkey guy, you're going to trial."
The trial court then acknowledged that defendant's pro se motion to dismiss on his "constitutional matters" and issues would be heard at a hearing scheduled for the following week, on April 9.
At that next hearing, the trial court heard argument on defendant's pro se motion to dismiss, and then denied it. After the court ruled on the motion, defendant and the court again discussed the issue of counsel:
"THE COURT: You have 30 days to appeal the decision. *** I do not dismiss your counsel from your-
"THE DEFENDANT: That's fine. I've got a new attorney, a federal attorney coming in ***.
"THE COURT: You keep telling-and you tell me that. Did you get him on board yet, him or her?
*791 "THE DEFENDANT: Yes, he's coming on board. He wants me-he wants to see how this goes and then he's going to pick up the whole case * * *[.]
"* * * * *
"THE COURT: He hasn't been in contact with the court at all.
"THE DEFENDANT: No. He wants me to call him tonight because he wants to see how this goes. He said if I get denied, to call him and he'll take it over.
"THE COURT: Well, we haven't received any information from this individual ***. ***"
The court went on to review and describe the background of defendant's representation by three successive court-appointed attorneys and stated that he was "starting to believe, and I do believe, that you're jumping from attorney to attorney for purposes of delay yourself." The trial court then confirmed that the trial would be going forward as planned on April 22, and further discussion ensued about defendant's representation by counsel:
"THE COURT: *** And so you will have your trial on that day.
"Now, you'll have your trial with your new attorney or you'll have your trial with Mr. Light, or you'll have your trial by yourself. You can try your own case by yourself, but I am going to have Mr. Light sitting next to you just to advise you if you need to be advised.
"At the same time, I'm not going to put Mr. Light in a position where he's looking at any kind of post-conviction relief or anything like that, Mr. Light.
"Because clearly, he wants his own attorney and clearly he wanted to fire you.
"So I want to make it very clear that when you go to trial, you're on your own.
*434 Mr. Light is not representing you, but he is there to advise you. He is not subject to any of the rules regarding ineffective assistance of counsel.
"So in other words, now you can't look at Mr. Light and say, hey, you know. Up on appeal, you can't say, hey, I had ineffective assistance of counsel from Mr. Light during *792 the course of this trial. You can't do that. It's not going to happen.
"If you're going to go that way, I will just release Mr. Light right now and let you represent yourself.
"THE DEFENDANT: I'll just leave Mr. Light for right now unless I get my new attorney tonight.
"* * * * *
"THE COURT: *** [W]hat I hear is that [your first attorney] lied to you, [your second attorney] lied to you. And so really, what that's telling me is that you're now going to suggest that Mr. Light has lied to you.
"THE DEFENDANT: Well, he came to court last week and said that I fired my first attorney.
"THE COURT: Are you telling me-if you're telling me that right now, that Mr. Light lied to you, then I have no alternative but to release him from the case.
"* * * * *
"THE COURT: So what I'm saying now is if you have issues regarding dishonesty with Mr. Light, you need to let us know right now, because I am not going to put him in a position down the line where he's having to write a letter to your appellate attorney or whatever explaining what occurred.
"* * * * *
"THE COURT: I can't have him-I cannot have him represent you right now if you believe that he was dishonest with you.
"THE DEFENDANT: I believe that he was dishonest with me.
"RULING *** BY THE COURT: All right. So I am going to remove Mr. Light from the case, but you will go to trial on your own.
"THE DEFENDANT: Okay.
"THE COURT: Okay. If you get a new attorney on board, he will go to trial, but he will go to trial on that day.
"THE DEFENDANT: Okay.
"* * * * *
*793 "THE COURT: *** I've released Mr. Light from the case because I'm concerned about some potential conflict you may have down the line with him.
"But I can tell you this, okay, your new attorney, when he gets on board, if you talk to him tonight, you tell him that I am not going to continue the case. And so if he still wants to represent you, he will do so. But he will not get any more time. Because the motions will come in front of me ***. ***"
The prosecutor informed the trial court that she had spoken with Kolkey earlier that afternoon on a separate matter, but also inquired if he knew who defendant was. She said, among other things, that Kolkey acknowledged speaking with defendant once, but that he had "no intention of taking this case." In response, defendant stated, "If [Kolkey] doesn't want to pick up the case, I'll have no problem representing myself. It's not a big deal."
Before the hearing ended, the trial court returned to the issue of defendant's representation and stated that, hopefully, Kolkey would call and that, "[b]ecause of the statements [defendant] made regarding Mr. Light, [he] cannot" leave Light on the case, although he would "love to leave him on." The court continued the discussion with defendant:
"THE COURT: *** Typically, what I like to see is people, in your situation particularly, having representation. Unfortunately, you put everybody in a difficult position because I can't-I don't really give-I don't give more than two attorneys. Really, the state really shouldn't give-or the government shouldn't give more than one attorney, quite frankly.
"You have a right to have an attorney. We gave you an attorney. But some-but I feel like you should always get two. But after that, I'm kind of done with it.
*435 "So hopefully, this other attorney comes through for you. But again, I doubt it. ***
"* * * * *
"THE DEFENDANT: I'm not worried about it; I'm perfectly capable of representing myself.
"THE COURT: Okay.
*794 "THE DEFENDANT: I'm not incapacitated at any point. I'm perfectly intelligent and I've roofed, I've built houses, and built cars. I mean I can do this. I've been educating myself in the law, so-
"THE COURT: Okay. Well clearly, you wrote-this was a really, a well-written motion. ***
"* * * * *
"*** Well, you know, I-we-I read it and I've looked into it and it's a well-written motion. It really is, you did a good job on that.
"I don't have a problem with you writing things. It's just kind of [a] different thing when you're in front of people and you have to make arguments, and you have to listen to what witnesses say.
"There's certain evidentiary things you may not be able to get into, because you haven't done it and you may not know what a hearsay-it's like me trying to build a house, I have no clue, I don't know where to pound the nail or how to do anything. It's the same thing for you. So you really have to be cognizant of that when you're in trial.
"* * * * *
"*** I will give you some leeway, but I do have to follow the rules of evidence. Okay?"
Defendant, the attorneys, and the trial court had further discussion about trial witnesses. The court explained to defendant that some of the witnesses he intended to call may not be allowed to testify and that he needed to provide names and contact information to the state because it was "fair play." Defendant responded, "Yeah, it is, I know. I know the rules."
The court concluded the hearing after reminding defendant that he would be representing himself at trial unless he hired an attorney:
"THE COURT: *** And so, hopefully, you get this guy willing to help you out.
"THE DEFENDANT: Yeah. He seems to be one of the best. I've seen him do some pretty good miracles.
"THE COURT: Okay.
*795 "THE DEFENDANT: He's representing quite a few people that I know.
"THE COURT: Okay.
"I want you to know now; you're coming out on your own.
"THE DEFENDANT: Yeah.
"THE COURT: Okay.
"If he's not helping you, you're going to be sitting there in that chair by yourself.
"THE DEFENDANT: I'm okay with that.
"THE COURT: All right. Okay.
"THE DEFENDANT: Thank you."
Defendant's next court appearance was a pretrial status hearing on April 21, the day before trial was scheduled to begin; he appeared without counsel at the status hearing and at his jury trial. The jury found him guilty, and the court entered a judgment of conviction. That judgment states, in part, "Defendant knowingly waived the right to counsel and elected to proceed without counsel."
On appeal, defendant asserts that the trial court erred in concluding that he validly waived his right to counsel, because he did not voluntarily and knowingly do so. We review "the validity of defendant's waiver of the right to counsel as a legal question in light of the circumstances of his particular case." State v. Haines , 283 Or. App. 444, 445, 388 P.3d 365 (2017).
Article I, section 11, of the Oregon Constitution,[1] guarantees a criminal defendant the right to counsel and the right to self-representation.
*436 State v. Hightower , 361 Or. 412, 416, 393 P.3d 224 (2017). We have explained that
"[a] criminal defendant may waive the right to be represented by counsel ***, but the waiver must be voluntarily and knowingly made. State v. Meyrick , 313 Or. 125, 132, 831 P.2d 666 (1992). The 'voluntary' component refers to an *796 intentional act that is not induced through coercion. Id . at [132 n. 8, 831 P.2d 666]. The 'knowingly' component refers to a defendant's knowledge and understanding of the right to counsel. Id ."
State v. Easter , 241 Or. App. 574, 583, 249 P.3d 991 (2011) (footnote omitted). "A defendant must be aware of the right to counsel and also understand the risks inherent in self-representation." Id. at 584, 249 P.3d 991 (citing Meyrick , 313 Or. at 132-33, 831 P.2d 666 ). Because we are reluctant to find that a defendant has waived a fundamental constitutional right, "a valid waiver will not be presumed from a silent record." Meyrick , 313 Or. at 132, 831 P.2d 666.
"[A] valid waiver *** must be preceded by a warning concerning the 'dangers and disadvantages of self-representation.' " Hightower , 361 Or. at 417, 393 P.3d 224 (quoting Meyrick , 313 Or. at 133, 831 P.2d 666 ). "An on-the-record colloquy is the preferred method of establishing that a defendant knowingly waived the right to counsel," and it is the court's obligation to deter-mine whether the waiver is made knowingly. Haines , 283 Or. App. at 451, 388 P.3d 365. However, a "catechism by the trial court" is not required. Meyrick , 313 Or. at 134, 831 P.2d 666. If, under the totality of the circumstances, "the record reflects that the defendant understood the risks of proceeding without counsel-that is, a defendant 'substantially appreciates the material risks of self-representation in his or her case'-we will affirm a trial court's acceptance of a defendant's waiver." Haines , 283 Or. App. at 451, 388 P.3d 365 (quoting State v. Jackson , 172 Or. App. 414, 423, 19 P.3d 925 (2001) ).
Here, defendant argues that the trial court erred in concluding that he knowingly waived his right to counsel. Specifically, defendant asserts that he was not advised of the risks of proceeding without counsel at any point prior to Light's dismissal.[2] There was no on-the-record colloquy here, or other indication that the trial court took steps to *797 make a determination that defendant appreciated the risks of self-representation-for example, the trial court did not explicitly discuss the risks of self-representation with defendant, ask defendant to sign a written waiver, or otherwise ensure that he understood the risks. The state nonetheless argues that the totality of the circumstances demonstrates that defendant knew the risk of self-representation and what an attorney could do for him.
We are not convinced that the circumstances here demonstrate that defendant appreciated the material risks of proceeding without counsel. As noted, the determination of a valid waiver is specific to each case, and we consider various factors:
"Whether there has been an intentional relinquishment or abandonment of a known right or privilege will depend on the particular circumstances of each case, including the defendant's age, education, experience, and mental capacity; the charge (whether complicated or simple); the possible defenses available; and other relevant factors."
Meyrick , 313 Or. at 132, 831 P.2d 666. We turn to the specific circumstances relied on by the state.
In support of its contention that defendant knowingly waived representation of counsel, the state argues that defendant was in his early thirties and was intelligent and articulate, appeared to understand exactly what was going on in court, and repeatedly insisted that he was able and wanted to represent *437 himself, rather than proceeding with his third court-appointed attorney, Light. Those facts do not establish that defendant actually understood the risks of self-representation. Although defendant referred to himself as "intelligent" and explained that he had roofed, built houses, built cars, and had been educating himself in the law, there is little information about what that self-education consisted of, and the characteristics of age, intelligence, and ability to build cars and houses do not demonstrate that defendant had any experience with the criminal justice system or in legal matters that might show that he had an understanding of the risks. See State v. Erb , 256 Or. App. 416, 424, 300 P.3d 270 (2013) (the "defendant's age, education and licensure as a geriatric nurse practitioner, ability *798 to run her own business, and coherence before the court" did not demonstrate that she had experience in the law or criminal justice system).
The state also contends that the circumstances demonstrate that defendant understood what an attorney could do for him. The state observes that, although the trial court did not expressly set forth the various tasks an attorney would undertake, there was some direction from the court during the April 9 hearing about what an attorney could do for defendant, such as subpoena witnesses, cross-examine the state's witnesses, make arguments in court, and handle evidentiary issues. However, the fact that a defendant has a general understanding of the role of counsel is insufficient to support a waiver. Erb , 256 Or. App. at 424, 300 P.3d 270 ; see also State v. Todd , 264 Or. App. 370, 382, 332 P.3d 887, rev. den. , 356 Or. 401, 339 P.3d 441 (2014) ("[I]n the absence of a sufficient warning about the dangers of self-representation or specific information about the benefits of counsel, we have consistently rejected the argument that a generalized understanding of a lawyer's services demonstrates knowledge of the risks of self-representation.").
The state further argues that defendant had at least some experience with the court system: he had appeared in the circuit court numerous times on this matter, he had researched and prepared motions on his own behalf and argued those motions to the court, and he had contact with at least three court-appointed attorneys and had spoken to a private attorney about taking his case. The fact that defendant researched, prepared, and argued a motion to the court might demonstrate that he had the ability to articulate a discrete legal concept to the court, but it does not demonstrate that he understood the risks involved in representing himself at a jury trial. Further, his pretrial experience in this case is not sufficient to demonstrate that he understood the risk of waiving representation. We have previously rejected arguments similar to those made by the state here. See Erb , 256 Or. App. at 425, 300 P.3d 270 (fact that the defendant had been represented by counsel for approximately two months during pretrial stages of proceedings did not allow the "trial court to infer that she understood the benefits of counsel and the disadvantages of self-representation");
*799 State v. Massey , 160 Or. App. 197, 199-200, 981 P.2d 352 (1999) (fact that the defendant had been represented by several lawyers in the case did not establish that anyone told him about the risks of representing himself and did not show, separately or in conjunction with the facts that the defendant had previously worked as a paralegal and had been involved in several civil lawsuits, that he understood the risks of self-representation); cf. Easter , 241 Or. App. at 584-85, 249 P.3d 991 (the defendant understood the risks of self-representation, when the record reflected that he had "extensive experience with the criminal justice system, including nine convictions, at least one of which went to trial," the trial court had warned him that it was a "bad idea" to proceed without counsel and explained three reasons why that was so, and he had been represented by counsel at his jury trial until he fired his attorney before presenting a closing argument).
Finally, according to the state, the fact that defendant said that he was trying to retain private counsel suggests that he understood the risk of proceeding without counsel. We disagree that that fact, considered in the particular circumstances here, supports an inference that defendant had an understanding of the risks of self-representation. Defendant's expressed desire to hire a private attorney apparently arose out of his *438 dissatisfaction with Light's representation. He wanted to replace Light with someone of his own choosing; he was not making a choice between having no representation or hiring private counsel, which could, depending on the particular circumstances, indicate some awareness of the risks of not having representation. See Easter , 241 Or. App. at 584, 249 P.3d 991 (acknowledging that, in some circumstances, a defendant's request for retained counsel can support an inference that the defendant understands the risks of self-representation). Additionally, defendant was dismissive of the effect it could have on him if he was unable to retain counsel. He told the trial court that, if the private attorney "doesn't want to pick up the case, I'll have no problem representing myself. It's not a big deal," and also said, in response to the court's statement that hopefully the other attorney would come through for him, "I'm not worried about it; I'm perfectly capable of representing myself." Those statements suggest that defendant did not think he needed to have retained counsel and that representing himself would be the equivalent. Rather than demonstrating that he understood what an attorney could do for him and the dangers and disadvantages of proceeding pro se , defendant's statements suggest that he did not understand the risks.
In sum, we are not persuaded that the circumstances here-individually or collectively-are sufficient to demonstrate that defendant "understood the risks inherent in self-representation ." Todd , 264 Or. App. at 381, 332 P.3d 887 (emphasis in original). We therefore conclude that, under the Oregon Constitution, the trial court erred in concluding that defendant validly waived his right to counsel.
Reversed and remanded.

Article I, section 11, provides, in part, that, "[i]n all criminal prosecutions, the accused shall have the right *** to be heard by himself and counsel."

Defendant argues that that point in time is the critical juncture, because the court refused to appoint further counsel after Light was removed from the case, effectively sealing defendant's decision to proceed pro se . The state argues in response that our analysis should not be limited to the time frame suggested by defendant. We need not decide the temporal issue, however. Even assuming that we can consider a broader time frame as suggested by the state, we are not persuaded that the record demonstrates that defendant understood the risks of representing himself at his jury trial on attempted murder and assault charges.