Argued and submitted May 19, order of circuit court reversed, defendant's sentence vacated, and case remanded to circuit court for resentencing May 27, 2011

# STATE OF OREGON,
*Plaintiff,*

*v.*

# IVEY WAYNE BARRETT,
*Defendant.*

# LINDA DIANE BARRETT,
*Appellant,*

*v.*

# STATE OF OREGON
and Ivey Wayne Barrett,
*Respondents.*

## (CC D110426M; SC S059423)

255 P3d 472

Janine Robben, Oregon Crime Victims Law Center, Portland, argued the cause and filed the memorandum for appellant.

Gregory A. Rios, Assistant Attorney General, Salem, argued the cause for respondent State of Oregon. With him

on the response were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Eric R. Johansen, Senior Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause for defendant-respondent Ivey Wayne Barrett. With him on the response was Peter Gartlan, Chief Defender.

Before De Muniz, Chief Justice, and Durham, Kistler, Walters, Linder, and Landau, Justices.**

DE MUNIZ, C. J.

---

** Balmer, J., did not participate in the consideration or decision of this case.

## DE MUNIZ, C. J.

Appellant is the victim of the crime of stalking, a Class A misdemeanor. ORS 163.732(2)(a). The trial court concluded that, in the criminal proceeding against defendant, the perpetrator of the crime, the state violated the victim's rights as a crime victim under the Oregon Constitution. However, the trial court held that neither the Oregon Constitution nor the Oregon statutes provided a remedy for the violation. Pursuant to ORS 147.537, the victim filed an interlocutory appeal from the trial court's order denying the victim a remedy. We reverse and remand.

We begin with a brief discussion of the relevant constitutional and statutory provisions. In 1999, the voters enacted Article I, section 42, of the Oregon Constitution, granting certain rights to crime victims. As applicable to this case, that provision states:

> "To preserve and protect the right of crime victims to justice, to ensure crime victims a meaningful role in the criminal and juvenile justice systems, to accord crime victims due dignity and respect and to ensure that criminal and juvenile court delinquency proceedings are conducted to seek the truth as to the defendant's innocence or guilt, and also to ensure that a fair balance is struck between the rights of crime victims and the rights of criminal defendants in the course and conduct of criminal and juvenile court delinquency proceedings, the following rights are hereby granted to victims in all prosecutions for crimes and in juvenile court delinquency proceedings:

> "(a) The right to be present at and, upon specific request, to be informed in advance of any critical stage of the proceedings held in open court when the defendant will be present, and to be heard at the pretrial release hearing and the sentencing or juvenile court delinquency disposition[.]"

Or Const, Art I, § 42(1)(a). That constitutional provision also authorizes the legislature to enact laws to effectuate those rights. Or Const, Art I, § 42(3)(c) ("The Legislative Assembly may provide by law for further effectuation of the provisions of this subsection * * *."). The legislature did so in ORS 147.500 *et seq*.

One statute that the legislature enacted requires that, at the beginning of any "critical stage" of a criminal proceeding, the prosecutor must inform the trial court about whether the victim has requested advance notice and been notified of such proceedings. ORS 147.510(2).[1] "Critical stage[s] of the proceeding" include the entry of a guilty plea and sentencing. ORS 147.500(5)(e), (h). At the outset of such proceedings, the prosecutor must inform the court, among other things, whether the victim is present, and if the victim is not present, whether the victim requested advance notice of any critical stage of the proceeding. ORS 147.510(2).

Other statutes establish procedures by which victims may seek to have violations of their constitutional rights vindicated. Briefly, a victim who "wishes to allege a violation of a right granted to the victim in a criminal proceeding by section 42 or 43, Article I of the Oregon Constitution" must timely inform the trial court of the alleged violation, describe the facts, and propose a remedy. ORS 147.515(1). The victim may do so "[o]n a form prescribed by the Chief Justice of the Supreme Court." ORS 147.515(2)(a). If a victim's claim is facially valid, the trial court is required to issue an order to show cause. ORS 147.515(3) (court "shall" issue order to show cause). If any party timely responds to the order to show cause, then the court will hold a hearing. *See* ORS 147.517(2)(b) (order to show cause must include date on which court "will conduct a hearing on timely responses to the claim"); ORS 147.530(1) (establishing procedures for "a hearing on a claim [or] a response filed under ORS

---

[1] ORS 147.510 provides, in part:

"(2) At the beginning of each critical stage of the proceeding:

"(a) The prosecuting attorney shall inform the court whether the victim is present.

"(b) If the victim is not present, the prosecuting attorney shall inform the court, based on the prosecuting attorney's knowledge, whether the victim requested advance notice of any critical stage of the proceeding and, if so, whether the victim:

"(A) Was notified of the date, time and place of the proceeding;

"(B) Was informed of the victim's rights implicated in the proceeding; and

"(C) Indicated an intention to attend the proceeding or requested that the prosecuting attorney assert a particular right associated with the proceeding and, if the victim made such a request, whether the prosecuting attorney agreed to do so."

147.517(4)")"; *cf.* ORS 147.520 (directing court to resolve claims where no response has been timely filed).

After a hearing, the court must issue an appropriate order granting or denying relief. ORS 147.530(4). The court may rule either orally or in writing; a written order generally must issue within seven days of the order to show cause, while an oral order in open court must be followed by a written order "as soon as practicable." ORS 147.530(5)(a), (c).[2]

With that background, we turn to the facts of this case. In considering the facts, this court "may not substitute its judgment for that of the trial court," and it is to review any challenge to a trial court factual finding "for evidence in the record to support the finding." ORS 147.537(17).

The victim is defendant's estranged wife. On February 15, 2011, defendant was charged with stalking the victim. The victim had a conversation with a victim advocate in the district attorney's office, invoked her right to be notified in advance of sentencing and other critical stage hearings, and completed a form memorializing those requests. The victim was told, and the form indicated, that the form needed to be returned to the district attorney's office by March 2. In fact, the victim returned the form early, and the district attorney's office received it sometime on February 28. Before that date, the victim advocate told the victim that she

---

[2] Although the victim in this case complied with her obligations under the statute, the trial court (insofar as the record indicates) did not follow the correct statutory procedure. While the victim's claim was facially valid (as the trial court itself later concluded), the court did not issue an order to show cause under ORS 147.517. *See* ORS 147.515(3) (requiring court to issue order to show cause under those circumstances). Because there was no order to show cause, defendant was not required to file any written response to the claim. *See* ORS 147.517(2)(a) (order to show cause must include date for responses); ORS 147.517(4)(a) (authorizing "the defendant," among others, to "contest the claim by filing a response" before the specified date). In the absence of a timely response, it appears the matter should proceed to disposition without a hearing. *See* ORS 147.517(2)(b) (order to show cause must give date "[o]n which the court will conduct a hearing *on timely responses* to the claim" (emphasis added)); ORS 147.520 (directing court to resolve claim when no response was timely filed); *but see* ORS 147.530(1) (statute authorizing hearing uses disjunctive "or" in providing for hearings on "a claim" or "a response").

Here, none of those defects is attributable to the victim, and nothing suggests that those defects violated any party's right to notice and an opportunity to be heard. Accordingly, we find that the apparent failure to follow the prescribed legal procedures have no legal significance to the outcome of this case.

did not need to be present for a pretrial appearance by defendant that was scheduled for 9:00 a.m. on February 28. That appearance was not scheduled to involve entry of plea or sentencing.

Meanwhile, the prosecutor engaged in plea negotiations with defendant. In accordance with those negotiations, when defendant appeared on February 28 at 9:00 a.m., defendant pleaded guilty to the misdemeanor stalking charge. Immediately thereafter, on that same date, the trial court sentenced defendant to two years' probation. The victim was not present, and the court did not engage in the colloquy required by ORS 147.510.[3]

When the victim learned that defendant had pleaded guilty and been sentenced, she filed a claim pursuant to ORS 147.515 for violation of her rights as a crime victim, using the form that is contemplated by that statute. The victim alleged that the state violated her rights under Article I, section 42(1)(a), of the Oregon Constitution "to be present at and, upon specific request, to be informed in advance of any critical stage of the proceedings held in open court when the defendant will be present, and to be heard at the pretrial release hearing and the sentencing." The victim requested that the parties be required to appear and show cause why the defendant's sentence should not be set aside and the defendant resentenced with notice to the victim and with her presence and participation at the new sentencing hearing. *See* ORS 137.013 (giving victim right to appear and express views at sentencing); ORS 147.515(1) (authorizing crime victim to "propose a remedy" for violation of rights). The prosecutor also filed a separate motion requesting that the court vacate defendant's sentence and resentence him, based on the violation of the victim's rights as a crime victim.

On April 1, the trial court held a hearing on the motions. Counsel for defendant appeared and opposed the motions. At the conclusion of the hearing, the trial court agreed with the victim that the state had violated her rights under Article I, section 42(1)(a) to be present at (and informed in advance of) "critical stage[s] of the proceedings."

---

[3] The text of ORS 147.510 is set out above. 350 Or at 394.

The court also concluded that the state had violated the victim's right under ORS 137.013 to appear and be heard at defendant's sentencing and that the prosecutor had failed to carry out his obligations under ORS 147.510 to notify the court whether the victim was present and, in her absence, whether she had requested notice and had indicated an intention to attend the proceedings. The trial court declined, however, to vacate defendant's sentence and order a resentencing hearing. The court reasoned that "the Oregon Constitution and Oregon statutes did not provide a remedy" for those violations and entered an order to that effect. As noted, the victim appealed to this court.[4]

On appeal, defendant offers three arguments as to why the victim should not receive the remedy that she seeks. In his response to the memorandum of law submitted to this court by the victim, defendant asserted that the victim waived her rights by failing to request a remedy within the time frame prescribed by ORS 147.533(1)(b)(C) (*i.e.*, before former jeopardy attached). Defendant also contended that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution barred resentencing as a remedy. Finally, in a motion for summary affirmance, defendant argued, that the victim's right to be notified of critical stages of the proceedings had not been violated, because she had not made the "specific request" required by Article I, section 42(1)(a), before the hearing on February 28.

We begin with whether the victim established a violation of her constitutional rights. We recognize that the trial court found that the state violated two statutes in addition to Article I, section 42(1)(a), of the Oregon Constitution—ORS 137.013 and ORS 147.510—and, ordinarily, this court's salutary sense of judicial restraint would lead us to avoid reaching constitutional questions in advance of the necessity of

---

[4] An order resolving a claim that the state has violated a crime victim's rights may be appealed to this court as a matter of right if (1) the criminal proceeding charged defendant with either a felony or a "person Class A misdemeanor," and (2) the alleged victim's rights violation occurred before the trial court pronounced its sentence or disposition in open court. ORS 147.535(4)(a); ORS 147.537(1). In this case, defendant was charged with misdemeanor stalking under ORS 163.732, which is classified as a "person Class A misdemeanor." OAR 213-003-001(15). As described, the violation of victim's rights occurred before the trial court sentenced defendant.

deciding them. As this court has observed: "The need to face a constitutional issue arises, if at all, only after the court determines what ordinary laws authorize, require or forbid." *Burt v. Blumenauer*, 299 Or 55, 70, 699 P2d 168 (1985) (citation omitted).

Applying the logic of that proposition, this court has stated that,

> "if statutory sources of law provide a complete answer to the legal question that a case presents, we ordinarily decide the case on that basis, rather than turning to constitutional provisions."

*Rico-Villalobos v. Guisto*, 339 Or 197, 205, 118 P3d 246 (2005). This court follows that decisional principle even if the parties attempt to force the court to decide a constitutional question by confining their arguments to matters of constitutional law, rather than addressing arguably dispositive aspects of subconstitutional law.

> "This court decides cases on subconstitutional grounds when it can, even if the parties present only constitutional arguments for the court's consideration. *See, e.g.*, *State v. Conger*, 319 Or 484, 490, 878 P2d 1089 (1994); *Zockert v. Fanning*, 310 Or 514, 520, 800 P2d 773 (1990) (so stating)."

*Li v. State of Oregon*, 338 Or 376, 391, 110 P3d 91 (2005). *See also State v. Cox*, 336 Or 284, 294, 82 P3d 619 (2003) ("Even when the parties frame their arguments only in constitutional terms below, however, we may consider an adequate subconstitutional basis for our decision.").

In this case, however, in addition to the parties' failure to address the potential applicability of either statute to the victim's claims and requested remedy, we note that the legislature has, as we have described, created a clear and expedited procedural path for a victim to assert claims for the violation of her constitutional rights, both at trial and on appeal. *See, e.g.*, ORS 147.517 (describing order to show cause procedure); ORS 147.530(5) (obliging court to issue remedial order on victim's successful constitutional claim within seven days of date of show cause order); ORS 147.535(2) (appellate jurisdiction "vested originally and

exclusively in the Supreme Court"); ORS 147.537(16) (requiring expedited decision by the Oregon Supreme Court). The procedural path to a statutory remedy is less clear, however, and we conclude that this is an appropriate occasion in which to address the victim's constitutional claims without also addressing or resolving whether the victim would be entitled to the remedy she seeks as a result of the violation of her statutory rights.

Defendant's argument that the victim did not prove a violation of Article I, section 42(1)(a), of the Oregon Constitution proceeds as follows. First, Article I, section 42(1)(a) grants the right to be present at and, *"upon specific request,"* to be notified in advance of critical stages in the criminal proceedings. (Emphasis added.) Defendant contends that the constitutional right to advance notice of a plea or sentencing hearing is not triggered until and unless the crime victim's specific request for advance notice is received by the prosecutor. Second, in this case, the form that the victim completed was not received by the district attorney's office until after the February 28 plea and sentencing hearing. Thus, according to defendant, the victim did not make a timely request for advance notice of that hearing and her constitutional rights were not violated.

The victim responds to defendant's first point by arguing that a victim's right to advance notice of plea and sentencing hearings is triggered when the victim makes a request for such notice, not when such notice is received. We need not decide that interpretive question, however, because the victim's response to defendant's second point—that her specific request was received before the plea and sentencing hearing—is persuasive. The trial court's order includes a specific finding that "[p]rior to Feb. 28, 2011, [the victim] specifically had requested to be informed in advance of, and to be present at, any critical stage of the proceedings and to be heard at sentencing." As noted, on appeal this court "may not substitute its judgment for that of the trial court as to any issue of fact and shall review challenges to a factual finding for evidence in the record to support the finding." ORS 147.537(17). From an affidavit submitted by the victim, the trial court could reasonably have inferred that, before February 28, the victim had a conversation with a victim

advocate in the district attorney's office, invoked her right to be notified in advance of sentencing and other critical stage hearings, and completed a form memorializing those requests. Neither the prosecutor nor defendant contest the victim's assertions, and the state does not claim that the prosecutor's office was unaware, on February 28, that the victim had requested to be present at defendant's sentencing and other critical stage proceedings. We therefore conclude that the victim established a violation of her constitutional right to advance notice of the plea and sentencing hearing.[5]

We turn, then, to the question of remedy. As noted, the victim seeks to have defendant's sentence vacated and defendant resentenced at a proceeding at which she can appear and be heard. Article I, section 42(3)(a), provides that "[e]very victim * * * shall have remedy by due course of law for violation of a right established in this section."

That right to a remedy is not unlimited, however. Although a remedy may include invalidating "a ruling of a court," it does not include invalidating a "conviction or adjudication."[6] Accordingly, we first must consider whether the relief requested by the victim would require invalidating either a "conviction" or an "adjudication."

We conclude that resentencing (at least in this case) would not require invalidating a "conviction." This court has explained that the term "conviction" can carry two different meanings:

---

[5] We think it important to note, for the benefit of the bench and bar, that had the prosecutor and the trial court engaged in the colloquy required by ORS 147.510, this constitutional violation likely would have been avoided.

[6] Subsection (2) of Article I, section 42, indicates that the right to a remedy provided by subsection (3) applies to some types of relief and not others:

"Nothing in this section * * * may * * * be used to invalidate an accusatory instrument, *conviction or adjudication* or otherwise terminate any criminal or juvenile delinquency proceedings at any point after the case is commenced or on appeal. *Except as otherwise provided in subsections (3)* and (4) of this section, nothing in this section may be used to invalidate *a ruling of a court* or to suspend any criminal or juvenile delinquency proceedings at any point after the case is commenced."

Or Const, Art I, § 42(2) (emphases added).

> "The first refers to a finding of guilt by a plea or verdict. The second, more technical, meaning refers to the final judgment entered on a plea or verdict of guilt. In the latter case conviction has not been accomplished until the judgment is made by the court."

*Vasquez v. Courtney*, 272 Or 477, 479-80, 537 P2d 536 (1975) (citations omitted). That ambiguity does not exist in Article I, section 42, because the text of that section distinguishes the word "conviction" from the term "sentence." Or Const, Art I, § 42(1)(b) (granting victims "[t]he right * * * to obtain information about the *conviction, sentence,* imprisonment, criminal history and future release from physical custody of the criminal defendant" (emphasis added)). In Article I, section 42(2), then, "conviction" refers only to the finding of guilt. On the facts of this case, resentencing defendant would not require invalidating his "conviction" by guilty plea. *See* ORS 135.432(4) (trial court is not bound by sentencing recommendations made pursuant to plea negotiations).

We next consider the meaning of the term "adjudication." On its face, that term would appear to refer to the final judgment in any case, civil or criminal. *See State v. Hoffman*, 236 Or 98, 103, 385 P2d 741 (1963) ("The word 'adjudication' in its strict judicial sense is generally held to imply a final judgment of the court, that is, it involves an exercise of the judicial power in hearing and determining the issues and rendering a judgment thereon."). In this case, however, we conclude that the constitutional text indicates that the voters intended a more technical meaning—one drawn from juvenile delinquency matters.

Juvenile delinquency proceedings have two stages that are roughly comparable to conviction and sentencing in adult criminal cases. The first is the juvenile court's determination that the youth committed an act that would be a crime if committed by an adult. That determination is termed an "adjudication," and it is analogous to an adult conviction. *See* ORS 419C.005(1) (jurisdiction of juvenile court extends to cases involving any juvenile who "has committed an act that is a violation, or that if done by an adult would constitute a violation, of a law or ordinance of the United States or a state, county or city"); ORS 419C.400(5) ("An adjudication by a

juvenile court that a youth is within its jurisdiction is not a conviction of a crime or offense."). The second is the juvenile court's determination of the proper consequences that should follow from the adjudication. That determination is called the "disposition," and it is analogous to an adult sentencing. *See* ORS 419C.411 (setting out contents of disposition order); ORS 419C.501 (permissible durations for various types of dispositions).[7]

Article I, section 42, specifically grants rights to crime victims both in adult criminal matters and in juvenile delinquency proceedings. The first provision of Article I, section 42, repeatedly pairs criminal cases with juvenile delinquency proceedings:

> "To preserve and protect the right of crime victims to justice, to ensure crime victims a meaningful role *in the criminal and juvenile justice systems*, to accord crime victims due dignity and respect and to ensure that *criminal and juvenile court delinquency proceedings* are conducted to seek the truth as to the defendant's innocence or guilt, and also to ensure that a fair balance is struck between the rights of crime victims and the rights of criminal defendants in the course and conduct *of criminal and juvenile court delinquency proceedings*, the following rights are hereby granted to victims in *all prosecutions for crimes and in juvenile court delinquency proceedings*[.]"

Or Const, Art I, § 42(1) (emphases added). Furthermore, pertinent portions of the text indicate the intent to grant the same rights to victims, both in adult criminal proceedings and in juvenile delinquency proceedings. *E.g.*, Or Const, Art I, § 42(1)(b) (granting crime victims the right "to obtain information about the conviction, sentence, imprisonment, criminal history and future release from physical custody of the criminal defendant or convicted criminal *and equivalent information regarding the alleged youth offender or youth offender*" (emphasis added)).

---

[7] In fact, Article I, section 42, itself recognizes the parallel between adult criminal sentencing and the juvenile delinquency disposition. *See* Or Const, Art I, § 42(1)(a) (granting crime victims the right to be heard at "the sentencing or juvenile court delinquency disposition").

Given that context, we conclude that "adjudication" in Article I, section 42, refers specifically to juvenile court delinquency adjudications. That understanding makes the prohibition of subsection (2) parallel: the violation of a crime victim's rights may not be used to invalidate a "conviction"—the determination of guilt in an adult criminal case—nor an "adjudication"—the comparable determination in a juvenile delinquency case.

Because defendant's sentencing was neither a "conviction" nor an "adjudication," it is a "ruling of a court." Article I, section 42(2), provides that "a ruling of a court" may not be invalidated "except as otherwise provided in subsections (3) and (4)." Subsection (3)(a) provides that every described crime victim "shall have a remedy by due course of law for violation of a right established in this section." If vacating defendant's sentence and ordering a resentencing hearing is a legally permissible remedy, it is a "remedy by due course of law" and may invalidate the trial court's ruling and defendant's sentence.

Defendant contends that resentencing is not available as a remedy for two reasons. First, defendant asserts that the victim waived her rights under ORS 147.533. Second, defendant contends that resentencing him would violate his rights under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. *See, e.g.*, Or Const, Art I, § 42(2) ("Nothing in this section reduces a criminal defendant's rights under the Constitution of the United States.").

We begin with the statutory waiver argument. ORS 147.533 provides, in part:

"(1)  A remedy under ORS 147.500 to 147.550 is waived if the remedy is requested:

"\* \* \* \* \*

"(b)  By any person after:

"\* \* \* \* \*

"(C)  Former jeopardy attaches, unless a motion for new trial or a motion in arrest of judgment is granted.

"(2)  Subsection (1) of this section does not apply to:

"(a)   Remedies that may be effectuated after the disposition of a criminal proceeding[.]"

Defendant asserts that former jeopardy attached on February 28, when defendant entered his plea and was sentenced, so that the victim—who did not seek a remedy until after that date—is barred from obtaining any remedy under ORS 147.533(1)(b)(C). That waiver rule, however, does not apply to "[r]emedies that may be effectuated after the disposition of a criminal proceeding." ORS 147.533(2)(a).[8]

The waiver issue thus turns on whether some substantive law makes resentencing a remedy that "may [not] be effectuated after the disposition of a criminal proceeding." The substantive law that defendant claims would prohibit resentencing is the federal Double Jeopardy Clause.[9] In other words, whether the victim has waived her right to require defendant's resentencing depends on the merits of defendant's double jeopardy argument. We turn to that question.

The Fifth Amendment to the United States Constitution provides, in part:

"No person shall * * * be subject for the same offense to be twice put in jeopardy of life or limb[.]"

To determine whether the remedy of resentencing here might violate double jeopardy principles, we look to the decision of the United States Supreme Court in *United States*

---

[8] That exception appears to be broad enough to include modifying the terms of a criminal judgment, including a sentence. For example, the statute creates a specific exception to the waiver rule for the right to obtain prompt restitution. ORS 147.533(2)(c) (waiver does not apply to "[t]he right to receive prompt restitution described in section 42(1)(d), Article I of the Oregon Constitution"). Any remedy that changed the amount of the restitution would require the court to modify the terms of the judgment. *See* ORS 137.071(2)(g) (if defendant is convicted, "the judgment document must include any * * * restitution").

[9] In this case, we need not consider any issue of former jeopardy under Article I, section 12, of the Oregon Constitution ("No person shall be put in jeopardy twice for the same offence * * *."). Article I, section 42, makes it clear that only federal constitutional rights are preserved inviolate; contrary state constitutional rights are superseded (unless expressly exempted). *See* Or Const, Art I, § 42(2) ("Nothing in this section reduces a criminal defendant's rights under the Constitution of the United States. Except as otherwise specifically provided, this section supersedes any conflicting section of this Constitution."). Accordingly, the only relevant question is whether the remedy sought by victim would violate the federal Double Jeopardy Clause.

*v. DiFrancesco*, 449 US 117, 101 S Ct 426, 66 L Ed 2d 328 (1980). One eminent treatise describes *DiFrancesco* as having "[o]ne of the most complete discussions by the Supreme Court of the policies underlying the double jeopardy clause." Wayne R. LaFave *et al.*, 6 *Criminal Procedure* § 25.1(b), at 574 (3d ed 2007). More importantly, *DiFrancesco* is directly concerned with whether double jeopardy permits a defendant to be resentenced to a longer term—in that case, after an appeal by the prosecution.

In *DiFrancesco*, the trial court had concluded that the defendant was a "dangerous special offender," but largely declined to enhance the defendant's sentence on that ground. 449 US at 122-23. The government appealed the sentence as it was permitted to do by statute; the appellate court, however, concluded that the appeal was barred by double jeopardy. *Id.* at 123.

On *certiorari*, the United States Supreme Court concluded that double jeopardy did not bar either the appeal or, if the appeal were successful, the imposition of a higher penalty on resentencing. *Id.* at 137-39. The Court began by discussing certain "general principles" that it identified from its prior decisions. *Id.* at 127. Among other things, the Court observed:

> " 'That guarantee [against double jeopardy] has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' "

*Id.* at 129 (alteration in original; quoting *North Carolina v. Pearce*, 395 US 711, 717, 89 S Ct 2072, 23 L Ed 2d 656 (1969) (footnotes omitted)). Furthermore, the Court noted that acquittals are entitled to "special weight" in double jeopardy jurisprudence; an acquittal for any reason will bar subsequent reprosecution, while second prosecutions are sometimes permitted in other circumstances. *DiFrancesco*, 449 US at 129-31.

Turning to the merits, the Court concluded that double jeopardy does not completely bar appeals by the government. *Id.* at 132. The question, then, was "whether a criminal

sentence, once pronounced, is to be accorded constitutional finality and conclusiveness similar to that which attaches to a jury's verdict of acquittal." *Id.* The Court concluded that sentences were not comparable to acquittals for double jeopardy purposes. Historically, the common law allowed a trial court to increase the length of the sentence, as long as it did so during the same term of court, and the Double Jeopardy Clause was based on common-law restrictions. *Id.* at 133-34. Furthermore, prior decisions of the Court had allowed greater punishments to be imposed on resentencing. *Id.* at 134-36.

Finally, the Court explained that the policies underlying double jeopardy are not undercut by a resentencing after appellate review. The harms intended to be prevented by the Double Jeopardy Clause—"repeated attempts to convict, with consequent subjection of the defendant to embarrassment, expense, anxiety, and insecurity, and the possibility that he may be found guilty even though innocent"— "have no significant application to the prosecution's statutorily granted right to review a sentence." *Id.* at 135-36. In resentencing, the defendant faces neither anxiety over the determination of guilt nor the risk of a wrongful conviction. *Id.* Furthermore, the defendant "is charged with knowledge of the statute and its appeal provisions, and has no expectation of finality in his sentence until the appeal is concluded or the time to appeal has expired." *Id.* A defendant has no more right to expect that his sentence will remain unchanged on appeal than he does to expect that his parole or probation will never be revoked. *Id.* at 137.

The principles outlined in *DiFrancesco* resolve this case. The victim sought the remedy of resentencing, so the issue is whether double jeopardy barred the trial court from granting that remedy. The only double jeopardy protection possibly implicated by requiring that defendant be resentenced is the protection "against multiple punishments for the same offense." *Id.* at 129 (internal quotation marks and citation omitted). However, the reasoning of *DiFrancesco* demonstrates that the prohibition against multiple punishments would not be violated by resentencing in this case. The imposition of the original sentence is not comparable to an acquittal for double jeopardy purposes, and resentencing

defendant with the possibility that his sentence may be increased is not inconsistent with either the history or the policies of the Double Jeopardy Clause. "The Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." *Id.* at 137.

The victim was entitled to a remedy by due course of law under Article I, section 42(3)(a). Her proposed remedy—vacating defendant's sentence and conducting a resentencing hearing—was permissible, in that it was not barred by the Double Jeopardy Clause.[10] Because the remedy could be "effectuated after the disposition" of this criminal proceeding, the victim had not waived her rights under ORS 147.533. The trial court erred in not granting the victim the relief that she sought.

In so holding, we do not suggest that the trial court must impose any different sentence than it did previously. That is a matter for the trial court to determine after an appropriate hearing.

The order of the circuit court is reversed, defendant's sentence is vacated, and the case is remanded to the circuit court for resentencing.

---

[10] We note that our conclusion accords with that of one eminent treatise. In discussing the double jeopardy implications of resentencing, LaFave concludes that a victim's statutory remedy in federal cases to have a sentence reopened if the victim was denied the right to be heard at sentencing does not violate double jeopardy. 6 *Criminal Procedure* § 26.7(b), at 840-41.