Argued and submitted March 22, 2018, affirmed October 9, 2019

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DAVID MICHAEL GARRETT,
*Defendant-Appellant.*

Jackson County Circuit Court
15CR31135, 15CR13646;
A162521 (Control), A163053

451 P3d 612

Defendant appeals judgments convicting him of first-degree theft, ORS 164.055, and supplying contraband, ORS 162.185. Defendant argues that the trial court erred by forcing him to represent himself at trial without a knowing and intentional waiver, thereby violating his statutory and constitutional rights to counsel. The state argues that the record reflects that defendant knowingly waived his right, because he had a sufficient understanding of the inherent risks of self-representation, and that defendant's repeated misconduct following an appropriate warning by the court established that his waiver was intentional. *Held*: The trial court did not err. In this case, the record reflects that defendant knowingly and intentionally waived his right to counsel.

Affirmed.

Timothy Barnack, Judge.

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Patrick M. Ebbett, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Hadlock, Presiding Judge, and DeHoog, Judge, and Aoyagi, Judge.

DEHOOG, J.

Affirmed.

**DEHOOG, J.**

In these consolidated cases, defendant appeals judgments convicting him of first-degree theft, ORS 164.055, and supplying contraband, ORS 162.185.[1] Defendant assigns error to three rulings of the trial court, contending that the court erred in (1) requiring him to represent himself at trial without a knowing and intentional waiver of counsel, thereby violating his rights under ORS 135.045,[2] Article I, section 11, of the Oregon Constitution,[3] and the Sixth Amendment to the United States Constitution;[4] (2) rejecting his request to waive his right to a jury trial; and (3) instructing the jury that it could reach a nonunanimous verdict. As to the first assignment of error, defendant argues that he did not knowingly waive his right to counsel, because he was neither warned of the inherent risks of self-representation by the trial court nor otherwise aware of those risks, and that any waiver of that right was not intentional, because the trial court did not provide an advanced warning that his conduct could be deemed a waiver of his right to counsel. The state responds that defendant's repeated requests for counsel, his observation of tasks and duties that counsel perform on behalf of defendants, and his evident understanding of the primary weaknesses of his case collectively demonstrate that he understood the risks of self-representation sufficiently to

---

[1] Although defendant filed notices of appeal as to both judgments, he challenges only his conviction for first-degree theft, in case number 15CR31135, and does not assign error to any ruling in the other case.

[2] ORS 135.045 governs the appointment and waiver of counsel in a criminal action. It provides, in relevant part,

"(1)(a) If the defendant in a criminal action appears without counsel at arraignment or thereafter, the court shall determine whether the defendant wishes to be represented by counsel.

"(b) If the defendant does wish to be represented by counsel, the court, in accordance with ORS 135.050, shall appoint counsel to represent the defendant.

"(c) If the defendant wishes to waive counsel, the court shall determine whether the defendant has made a knowing and voluntary waiver of counsel. ***."

[3] Article I, section 11, of the Oregon Constitution provides that "[i]n all criminal prosecutions, the accused shall have the right *** to be heard by himself and counsel[.]"

[4] The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to have the Assistance of Counsel for his defence."

be able to knowingly waive counsel. The state further contends that, because the trial court provided defendant with multiple warnings that his conduct towards his attorneys was placing him at risk of losing his right to counsel, his ultimate waiver of that right was intentional. We conclude that the record reflects that defendant understood the material risks of self-representation associated with his case and that the trial court provided adequate advance warning that his conduct could result in a loss of the right to counsel. Therefore, writing only to address the first assignment of error, we affirm.[5]

"If a trial court grants a motion to withdraw and does not appoint substitute counsel, thus requiring the criminal defendant to proceed *pro se*, we review for error of law whether the defendant has knowingly and intentionally waived his or her right to counsel." *State v. Langley*, 351 Or 652, 666, 273 P3d 901 (2012). In addressing that legal question, however, we review the validity of the waiver of counsel "in light of the circumstances of [a defendant's] particular case." *State v. Borba*, 290 Or App 787, 795, 417 P3d 430 (2018) (internal quotation marks omitted). In this case, a full understanding of the relevant circumstances requires us to review in some detail the procedural history leading up to the denial of defendant's ultimate request for appointed counsel.

The relevant facts are largely undisputed, with one exception that we note below. Defendant was charged with first-degree theft for stealing a chainsaw from a neighborhood store and selling it to a nearby pawn shop. When a detective investigating the theft spoke to defendant about it, defendant immediately volunteered that he had stolen the chainsaw from the store and sold it to the pawn shop. Defendant was later arrested and taken to jail, where he remained pending trial. At defendant's request, the trial court appointed counsel to represent him. However, at a hearing held on August 25, 2015, defendant sought in

---

[5] We decline to consider defendant's insufficiently preserved argument that the trial court erred in denying his request to waive jury and try his case to the court, and we reject on the merits without further discussion his assertion that the trial court plainly erred in instructing the jury that its verdict need not be unanimous.

open court to fire the attorney appointed to represent him, Collins, which led to the following exchange:

> "[DEFENDANT]:   I want a new attorney and if I see this bitch and she come back tomorrow, I'm gonna end up sockin' her.
>
> "* * * * *
>
> "COURT:   Alright. [Defendant]? I'm deeply offended by what you just said. I would consider that a direct threat toward Ms. Collins. I want you to know you're gonna get one attorney and that's it * * *."

The trial court released Collins and subsequently appointed a new attorney, Scales, to represent defendant. At a hearing held on September 11, 2015, however, the court also released Scales from the case. The parties dispute whether the court's decision to release Scales was due, at least in part, to threats defendant had made against him. During the September 11 hearing, Scales informed the trial court that defendant had expressed a desire for a new attorney. Scales also reported that, before he and defendant first met, Scales had been told by jail staff that defendant was prepared to "beat [his] ass." Scales then met with defendant through a glass partition, during which time defendant cursed at Scales and refused to cooperate with him. At the hearing, the trial court permitted defendant to tell his side of the story, and defendant claimed that Scales was the one who had initiated the profanity and that defendant had never threatened to punch him.

> "COURT:   Did you tell somebody you were going to punch somebody? If you lie to me, you're going to be held in contempt.
>
> "* * * * *
>
> "[DEFENDANT]:   No, I didn't!
>
> "COURT:   Okay. If I find out otherwise, you're gonna be held in contempt of court and you're gonna be doing a lot more time * * *.
>
> * * * * *
>
> "COURT:   If that's your final answer, then I'm going to accept it. But if I find out otherwise, I'm holding you in contempt of court."

Although the trial court purported to accept defendant's version of what had happened with Scales, the court also made it clear to defendant that, in its view, he was causing the conflicts with his attorneys and that it believed "Mr. Scales when he tells [the court] that *** these problems were made." Scales clarified for the court that he had only heard potential threats from jail deputies and that defendant had not made any threats to him when they met in person. Nonetheless, the trial court released Scales without specifically explaining its decision to do so. However, the court did tell defendant that "we're not going to continue putting people in front of you just so you can get upset and want to fight." Accordingly, the trial court refused to appoint another attorney for defendant and told him that he would have to hire his own attorney or represent himself at subsequent hearings. Consistent with that ruling, defendant indicated at a hearing held before a different judge on September 21, 2015, that he was representing himself, and the parties proceeded to select trial dates. On October 1, 2015, however, the trial court reversed its earlier decision and appointed a third attorney to represent defendant. The trial court placed certain conditions on its decision to assign defendant yet another attorney:

"COURT:   Alright. I want to make it very clear, [defendant], 'cause you've got a lot of cases and you threatened to punch one [attorney] on the record with me. Don't even deny it, because it's recorded.

"*****

"COURT:   And then it's my understanding with Mr. Scales, you refused to meet with him. So, I'm just putting these things on the record because you have caused the delay of your case. So, you have no speedy trial issues. So, I'm just making a record for this. Alright? So, both of those people were fired because of your actions. I will appoint another attorney to represent you, but if any of those shenanigans go on and they are forced to withdraw, you're not getting another court-appointed attorney. Is that clear?

"[DEFENDANT]:   Yes."

Ultimately, defendant's third attorney, Murphy, was forced to withdraw from the case on January 13, 2016, due to

personal reasons, and the court appointed a fourth attorney, Claar, to represent defendant. At a pretrial hearing held the day before trial, however, defendant again expressed dissatisfaction with his appointed counsel and asked the court to replace Claar. Defendant was concerned by Claar's statement that he was only representing defendant because a judge had forced him to and that he would not otherwise represent defendant "for anything in the world." Claar clarified that he had told defendant that he would not take the case privately for any reason but was representing defendant as a court-appointed attorney. Claar further explained:

> "Well, Your Honor, I was just going to point out that the difficulty you're having with him right now is essentially what I'm experiencing, only on a level ten times more and with very much more colorful language and vague threats. So, *** it's to the point where I believe that there is a possible conflict, even with me going forward on it; [defendant] has informed me he's filed a bar complaint against me and that he *** said, *** he better not see me in court, I better not come 'F-ing' near him. He's not making specific threats, but at the same time, I don't want to be the next person to walk down that back hallway behind the courtroom with a pen to my throat. You know? So, you know, and sitting at the table there with someone who's saying these types of things and being so confrontational with me."

> Claar later added:

> "[Defendant] has told me that ***, in very colorful words, that he better not 'F-ing' see me at trial, [I] better not 'F-ing' come near [him] or else. And just ranting and raving, and cussing me out."

After specifically noting Claar's reference to a potential bar complaint, the trial court decided to release him from any further obligations to defendant and told defendant that he needed to either prepare to represent himself at trial the next day or hire his own attorney. As further justification for not appointing another attorney or a legal advisor for defendant, the court added during pretrial discussions the next day that "it's reasonable to believe that you're going to threaten your next attorney physically. And *** I cannot order attorneys to advise you, if I believe, and I do, that you're going to physically threaten them *** so *** it's

really impossible \* \* \* to give you an attorney \* \* \* because you will threaten them." Later in that discussion, the trial court referenced defendant's threat to Collins, noted that defendant may have also threatened Scales, and indicated that Claar's explanation of events had suggested similarly threatening behavior by defendant. Ultimately, the trial court summarized for defendant, "so you've had three attorneys, actually four, but you've had three that you've threatened." And, in response to defendant's continued requests that it appoint substitute counsel, the court warned defendant that he was not to claim to the jury that he was being forced to represent himself, or the court would tell the jury that defendant had previously released three attorneys. The court assured defendant, however, that to prevent the jury from developing a bias against him, it would not tell the jury that he had threatened his attorneys with physical violence.

Before calling in the prospective jurors, the trial court attempted to address defendant's concerns regarding the *voir dire* process. Defendant explained how he understood his case and asked how he might question potential jurors appropriately in light of that understanding.

"COURT:   No, but I'm just asking, what is something you'd be concerned about—a jury?

"[DEFENDANT]:   Well, the whole argument is my lawyer is supposed to discredit [the detective and] the way he interviewed me.

"COURT:   So will you be concerned that maybe \* \* \* they would just believe a police officer because they're a police officer? Is that something you're concerned about?

"[DEFENDANT]:   Nah, I'm not even—I never would have represented myself."

Defendant, acting *pro se*, proceeded to try his case to the jury and was ultimately found guilty. Defendant now appeals the resulting conviction and argues that the trial court erred in forcing him to represent himself at trial.

In accordance with our typical practice, we begin by addressing questions of state law. *See State v. Clardy*, 286 Or App 745, 754, 401 P3d 1188, *adh'd to as modified on recons,* 288 Or App 163, 406 P3d 219 (2017), *rev den*, 364 Or 680

(2019) (analyzing right to counsel under state constitution before turning to defendant's Sixth Amendment argument). We therefore first consider defendant's argument that the trial court violated his right to counsel under Article I, section 11, of the Oregon Constitution by requiring him to represent himself when he had not knowingly and intentionally waived that right.[6]

As the Supreme Court has explained, "[a] criminal defendant * * * may waive the right to counsel protected by Article I, section 11, of the Oregon Constitution, if the defendant waives that right knowingly and intentionally." *Langley*, 351 Or at 669. The "knowingly" component refers to a defendant's *understanding* of the right to counsel and focuses particularly on whether the defendant is aware of the risks of self-representation. *State v. Meyrick*, 313 Or 125, 132 n 8, 831 P3d 666 (1992); *State v. Guerrero*, 277 Or App 837, 846-47, 373 P3d 1127 (2016). The "intentional" component, on the other hand, refers to whether a defendant has intentionally—either expressly or through continued misconduct following a sufficient court warning—chosen to proceed without counsel. *Clardy*, 286 Or App at 760; *see also Guerrero*, 277 Or App at 845 (noting that Oregon courts use the term "intentionally" interchangeably with "voluntarily" and the term "knowingly" interchangeably with "intelligently," with the latter two terms both referring to "a defendant's *knowledge and understanding* of the right to counsel" (emphasis in original; internal quotation marks and citation omitted)).

On appeal, defendant argues that his purported waiver of his right to counsel did not satisfy either of the required components of a valid waiver. Defendant first argues

---

[6] Generally, we decide statutory or other subconstitutional matters before turning to arguments under either the state or federal constitution. *State v. Barrett*, 350 Or 390, 398, 255 P3d 472 (2011). However, even though defendant cites ORS 135.045 in his brief, the arguments of both parties focus on the state and federal constitutional rights to counsel. Thus, in line with our previous decisions on this issue, we begin our analysis with the Article I, section 11, right to counsel rather than the right provided by ORS 135.045. *See, e.g.*, *State v. Erb*, 256 Or App 416, 420 n 4, 300 P3d 270 (2013) (noting that "the current text of that statute * * * appears to impose on the trial court obligations similar to those imposed under the state and federal constitutions when a defendant wishes to waive the right to counsel").

that he did not knowingly waive his right because the trial court never informed him of the risks of self-representation. The state concedes that the trial court did not inform defendant of the risks of self-representation but asserts that the record indicates that he understood those risks. Second, defendant argues that he did not intentionally waive his right to counsel through misconduct because he did not engage in misconduct after having been warned by the court that his conduct could result in a loss of that right. As to the intentional component, defendant concedes that his threats towards Collins were misconduct but argues that, because he did not engage in comparable conduct towards Scales or Claar, the trial court's previous warning against direct threats did not apply. The state responds that, notwithstanding defendant's contention that the trial court expressly found that he had not threatened Scales and defendant's argument that his threats to Claar were at most "vague," his behavior did contravene the warning he had received; thus, the state argues, the trial court properly determined that defendant had both knowingly and intentionally waived his right to counsel.

Consistent with our previous decisions, we first examine whether the more expansive knowledge component of a valid waiver was satisfied. *See Clardy*, 286 Or App at 755 (analyzing the knowledge component first). As noted, a defendant must be both generally aware of his or her right to counsel and understand that right. *Id.* at 756. Because defendant does not dispute a general awareness of his right to counsel, we focus our analysis on his understanding of that right. *Id.* Specifically, a defendant must "understand the risks inherent in self-representation." *Borba*, 290 Or App at 796 (internal quotation marks omitted). Because a fundamental constitutional right is at issue, we are hesitant to find that a defendant has waived his or her right to counsel. *Id.* Accordingly, "'a valid waiver will not be presumed from a silent record.'" *Id.* (quoting *Meyrick*, 313 Or at 132). Further evaluating whether the record supports the determination that defendant sufficiently understood the risks of self-representation, we bear in mind that "[a]n intelligent waiver of the right to counsel requires more than a general awareness that a lawyer might be helpful but less

than knowing all the potential risks of self-representation." *Guerrero*, 277 Or App at 845.

The Supreme Court has long considered an on-the-record colloquy between the court and a defendant explaining the risks of self-representation to be the preferred method of verifying that the defendant sufficiently understands the right to counsel. *See Clardy*, 286 Or App at 756 (citing *Meyrick*, 313 Or at 133-34); *Guerrero*, 277 Or App at 847 (same). "[H]owever, 'Article I, section 11, does not require a catechism by the trial court'" and the "'failure of a trial court to impart a particular piece of information to a defendant will not, of itself, require reversal of a conviction.'" *Clardy*, 286 Or App at 756 (quoting *Meyrick*, 313 Or at 133-34) (internal brackets omitted). What matters is whether "the record reflects that the defendant *** understood the risks of self-representation." *State v. Easter*, 241 Or App 574, 584, 249 P3d 991 (2011). In making that assessment, we begin with the premise that "[a] defendant demonstrates *prima facie* error by showing that the trial court allowed him or her to proceed at a critical stage without an attorney and did not determine that *** he or she was aware of the risks of self-representation." *State v. Erb*, 256 Or App 416, 422, 300 P3d 270 (2013) (internal quotation marks omitted); *see also State v. Haines*, 283 Or App 444, 451, 388 P3d 365 (2017) (explaining that a *prima facie* error exists when the trial court did not mention the risks of self-representation or put any facts on the record indicating the defendant understood the risks). Thus, because neither party in this case suggests that the trial court engaged in such a colloquy with defendant, he has established a *prima facie* error.

"The state may overcome that *prima facie* showing by establishing that, in the totality of the circumstances, the defendant was nonetheless aware of the risks of self-representation." *Erb*, 256 Or App at 422-23. For example, a waiver may be valid if "under the totality of the circumstances, the record reflects that the defendant understood the risks of proceeding without counsel—that is, a defendant *substantially appreciates the material risks* of self-representation of his or her case." *Borba*, 290 Or App at 796

(internal quotations marks omitted; emphasis added). Importantly, "it is not required that a defendant know and completely appreciate every potential risk of self-representation in his or her case, but a defendant's abstract knowledge that there may be risks or disadvantages of self-representation, without any appreciation of what those risks might be, is insufficient." *Erb*, 256 Or App at 422 (internal quotation marks omitted).

Here, we conclude that defendant's specific understanding of the risk of proceeding without an attorney in his case is sufficient to satisfy the knowledge component of the waiver. During the investigation that gave rise to the theft charge in this case, a detective interviewed defendant about the case; defendant immediately told him that he had stolen the chainsaw and sold it to a pawn shop. On the day of the trial, defendant (acting *pro se*) stated that "the whole argument is my lawyer is supposed to discredit [the detective and] the way he interviewed me." That articulation of what defendant believed his lawyer was "supposed to" do reflects more than an abstract awareness that counsel could be helpful to defendant and that there were risks to proceeding without one; based upon defendant's recognition that his case hinged on the validity of his confession and that an attorney would be necessary to adequately challenge both the detective who interviewed him and the interview process, it is apparent that he understood at least one of the specific ways in which he would be at a disadvantage if he did not have counsel. Furthermore, defendant's subsequent assertion that he would never have represented himself demonstrates that he substantially appreciated that he needed an attorney and that he understood the material risk of being unable to challenge his confession without counsel.

Defendant's specific understanding of that material risk differentiates this case from others in which a mere general awareness of risks associated with self-representation was insufficient to satisfy the knowledge component of the waiver. In previous cases without sufficient warnings or "'specific information about the benefits of counsel, we have consistently rejected the argument that a generalized understanding of a lawyer's services demonstrates knowledge of

the risks of self-representation.'" *Borba*, 290 Or App at 798 (quoting *State v. Todd*, 264 Or App 370, 382, 332 P3d 887, *rev den*, 356 Or 401 (2014)). As we have repeatedly held, general waivers or warnings from a court are not sufficient to establish that a defendant understands the risks of self-representation. *See, e.g.*, *Erb*, 256 Or App at 423 (written waiver stating that defendant was "aware of the help a lawyer might be to me" was insufficient); *State v. Culver*, 198 Or App 267, 270-71, 108 P3d 104 (2005) (trial court asking the defendant whether he understood that he would be "at a disadvantage" if he represented himself was insufficient); *State v. Richardson*, 159 Or App 592, 594, 600-01, 978 P2d 435, *rev den*, 329 Or 479 (1999) (trial court's statement that "a lawyer may be able to assist you in challenging the indictment" was insufficient); *State v. Meyer*, 116 Or App 80, 84, 840 P2d 1357 (1992) (trial court's warning that jury trials are "kinda tricky" was insufficient).

Relatedly, this also is not a case where it is evident that a defendant has underestimated the risks of self-representation. In *Borba*, our most recent decision addressing that issue, the defendant told the court that he was "not worried about it; I'm perfectly capable of representing myself." 290 Or App at 793. The defendant further justified his competence by stating that he was "perfectly intelligent" and had built roofs, houses, and cars. *Id.* at 794. We concluded that the defendant had not sufficiently understood the risks of self-representation, in part, because he had underestimated those risks. *Id.* at 797, 800. Here, defendant's insistence that the trial court appoint substitute counsel for him and his description of the specific tasks that he believed his attorney would perform reflected his recognition of the importance of having counsel and the correspondingly high risk of representing himself. And, under at least some circumstances, repeated requests for counsel, such as defendant made in this case, can indicate an understanding of the risks of self-representation. *Easter*, 241 Or App at 584. *Cf. Borba*, 290 Or App at 799 (determining that the defendant's expressed desire to hire a private attorney was more indicative of his frustration with his appointed counsel rather than his preference between self-representation and having counsel). That is, defendant's repeated requests, in

conjunction with his awareness that an attorney could challenge his confession in a way that he, acting *pro se*, could not, further suggests that he understood that representing himself would put his case at risk. Thus, the trial court did not err in determining that the knowingly component of the waiver had been satisfied.

We turn next to the question whether the trial court correctly determined that defendant had intentionally waived his right to counsel. Significantly, a waiver need not be express, and "[a] defendant's conduct may serve as a valid waiver so long as the conduct adequately conveys the defendant's knowing and intentional choice to proceed in court without counsel." *Langley*, 351 Or at 669. Here, because there is no contention that defendant "intentionally expressed his waiver by words, * * * we consider only whether defendant's conduct adequately conveyed defendant's intentional choice to proceed without counsel." *Clardy*, 286 Or App at 760. In *Clardy*, we summarized the Supreme Court's approach to determining whether there has been a valid waiver by conduct, noting that it has three prerequisites:

> "(1) engag[ement] in repeated misconduct in the attorney-client relationship that defeats the ability of counsel to carry out the representation function; (2) an advance warning to the defendant that continuation of [his or her] abusive behavior would result in being forced to proceed *pro se* and; (3) a reasonable opportunity for the defendant to present his or her position on the facts in a manner that permits, *if appropriate*, the safeguarding of confidential communications and trial strategy from public disclosure."

*Id.* at 761 (citing *Langley*, 351 Or at 669-73) (internal quotation marks and ellipses omitted; first brackets added, second brackets in *Clardy*; emphasis added). We address each prerequisite in turn.

As to the first prerequisite, repeated misconduct, we conclude that the trial court did not err in determining that defendant's multiple threats to multiple attorneys constituted repeated misconduct that defeated counsel's ability to represent defendant. We are cognizant that, as defendant correctly asserts, merely refusing to cooperate with counsel does not constitute misconduct. *Langley*, 351 Or at 670.

Thus, when evaluating the implications of an attorney's motion to withdraw on a defendant's right to counsel, a trial court "must distinguish between problems in the attorney-client relationship engendered by the defendant's permissible (but usually foolish) decision to decline to cooperate and other problems, such as a bona fide conflict of interest, that prevent counsel from participating effectively in the attorney-client relationship." *Id*. at 669. Here, there is no dispute that defendant's misconduct led to the removal of his first counsel, Collins. Defendant, in an open hearing, demanded a new attorney and threatened to hit Collins if she appeared in court with him the next day. The parties dispute, however, whether there were any further instances of misconduct following Collins's removal from the case.

In defendant's view, his behavior towards his second attorney, Scales, cannot be deemed misconduct, because the trial court expressly found that he had not threatened Scales. To be sure, it is less than clear why, exactly, the trial court relieved Scales from further representing defendant. After Scales told the trial court that he had heard from jail staff that defendant had threatened to "beat [his] ass," defendant denied having threatened to hit Scales. And, as defendant notes, the trial court appears to have accepted defendant's denial when it stated, "If that's your final answer, then I'm going to accept it." Additionally, before being released, Scales clarified for the court that he had only heard about defendant's alleged threats secondhand and that defendant had not threatened him in person. Nonetheless, the court opted to replace Scales, stating that it believed his account of events. In light of those arguably ambiguous pronouncements by the trial court, we do not share defendant's view that the trial court expressly found that he had not threatened Scales. However, given that Scales had also reported to the court that defendant had refused to cooperate with him when the two met at the jail, we agree that it is at least unclear why the trial court released Scales, and whether it was substantially due to defendant's refusal to cooperate with him.

Even assuming, however, that defendant is correct that the trial court found that he had not threatened Scales—

and recognizing that his direct conduct towards Scales, specifically, his refusal to cooperate with him, cannot be viewed as misconduct—the record reflects repeated misconduct following the removal of Collins as his attorney. That is, we reject defendant's characterization of his conduct with respect to his fourth attorney, Claar, as immaterial "vague threats." Much as he had with Collins, whom he had threatened to "sock" if she returned to court with him, defendant made it clear to Claar that "he better not 'F-ing' see [Claar] at trial, [Claar] better not 'F-ing' come near [defendant] or else." Although Claar himself characterized defendant's threats as "vague," we do not see a meaningful distinction between the threat to Collins and those directed towards Claar. Both were responses to defendant's dissatisfaction with his counsel, and both reflected genuine hostility towards his attorneys that extended beyond a mere expression of disagreement with their handling of his case. Based upon defendant's demeanor towards him, Claar feared being "the next person to walk down that back hallway behind the courtroom with a pen to [his] throat." Given those circumstances, we conclude that the trial court reasonably viewed defendant's behavior towards Claar both as threatening and as misconduct under *Langley*.[7] Accordingly, the record reflects that defendant engaged in repeated misconduct, first by threatening Collins, and then, at a minimum, also by threatening Claar.

Turning to the second *Langley* prerequisite, that a defendant receive a warning that further misconduct may be deemed a waiver of the right to counsel, we also conclude that the record satisfies that requirement. Although the trial court could perhaps have been more explicit with its advance warning to defendant, the court adequately warned defendant that continued misconduct could have that consequence. "An advanced warning *** is necessary to alert the defendant to the fact that a repetition of demonstrated misconduct may result in a waiver of the right to counsel,

---

[7] Defendant asserts that Claar was removed inappropriately due to defendant's threat to file a bar complaint. Because the record reflects that defendant threatened Claar and that supported the trial court's decision to dismiss Claar, we need not address whether defendant's bar complaint, or threat thereof, amounted to a bona fide conflict of interest that might have justified the removal of counsel but would not have constituted a waiver of defendant's right to counsel.

rather than some other consequence." *Langley*, 351 Or at 670. When a trial court determines that a defendant has waived the right to counsel through repeated misconduct, it must "refer to or otherwise base its decision on any prior warning to defendant that repetition of defendant's manipulative behavior to unreasonably delay court proceedings would (or even could) result in the court requiring [the defendant] to proceed *pro se*." *Id.* at 671. We have previously emphasized that an advance warning requires more than just "a mere showing that the defendant has engaged in past or present misconduct." *Guerrero*, 277 Or App at 846 (internal quotation marks omitted). Therefore, we look to whether the trial court properly alerted defendant to the potential consequences if he repeated his misconduct.

The parties identify two potential instances in which the trial court provided a warning to defendant: (1) after threatening his first attorney, and (2) before the trial court agreed to appoint a third attorney. First, after defendant threatened to "sock" Collins, the trial court characterized his comments as a "direct threat" and immediately followed that with "I want you to know you're going to get one [more] attorney, and that's it." Under those circumstances, even though defendant got what he wanted—a different attorney—he reasonably would have understood that further threats directed toward counsel would *not* result in the appointment of a new attorney but would instead result in the loss of his right to counsel.

Later interactions between the trial court and defendant, even before the second, explicit warning, further support our conclusion that defendant would have understood that misconduct would have that consequence. When the trial court removed Scales, it initially told defendant that he would have to hire his own attorney or represent himself moving forward. That decision would have impressed upon defendant the seriousness of the court's warning that he was only "going to get one [more] attorney," because he in fact had to represent himself for at least one hearing before the trial court appointed another attorney to represent him.

The trial court was even more explicit in its second warning to defendant, which it gave upon ultimately agreeing

to grant defendant's request for a third attorney. The trial court reminded defendant that both Collins and Scales had been released "because of [his] actions." Although the court referenced defendant's refusal to cooperate with Scales as the basis for releasing him, it also recounted that defendant had "threatened to punch [Collins] on the record." And, in that context, the trial court stated that if any further such "shenanigans" forced his new attorney to withdraw, defendant was "not getting another court-appointed attorney." The court emphasized that point, asking defendant, "Is that clear?" It evidently was, as defendant simply replied, "Yes." Thus, the trial court made it abundantly clear to defendant that his actions had led to the dismissal of his previous two attorneys and any further such misconduct—any further shenanigans—would result in his loss of the right to counsel. Thus, we conclude that, under those circumstances, the trial court gave defendant adequate advance warning that his conduct could result in a forfeiture of his right to counsel.

Finally, the third *Langley* prerequisite was satisfied because defendant was given a reasonable opportunity to present his position on the facts. Although it is true that defendant was not given a confidential means to present his position, this was not an instance where such safeguards were necessary. This case differs starkly from *Langley*, where the trial court considered complaints about the defendant's conduct from his attorneys in sealed affidavits but forced the defendant to disclose his position on the facts in open court. 351 Or at 672. Here, defendant's threat towards Collins occurred during a hearing, on the record. Additionally, both Scales and Claar raised the issue of threats in open court and the trial court gave defendant an opportunity to present his side of the story. Indeed, defendant asserts that the trial court *accepted* his side of the story with respect to Scales. Thus, the third prerequisite for an intentional waiver, like the first two, is also satisfied in this case; accordingly, we conclude that defendant knowingly and intentionally waived his right to counsel under Article I, section 11, of the Oregon Constitution.

Having rejected defendant's argument under the Oregon Constitution, we briefly turn to defendant's argument

that he did not waive his right to counsel under the Sixth Amendment. On appeal, defendant has made the same arguments under the state and federal constitutions. In fact, neither party has argued for application of a different analysis between the state and federal rights to counsel. In *Clardy*, we similarly affirmed a waiver of the right to counsel under the Oregon Constitution, and the defendant did not "identify any other circumstances that would lead us to reach a different result under the Sixth Amendment." 286 Or App at 765. Accordingly, we concluded that the defendant had waived his Sixth Amendment right to counsel as well. Faced with the same circumstances here, we reach the same conclusion.

Under the particular circumstances of this case, we conclude that, following one or more acts of misconduct towards court-appointed counsel, defendant was warned that similar conduct would result in the loss of his right to counsel, and that he, in fact, engaged in similar conduct. As a result, defendant, through his conduct, knowingly waived his right to counsel under Article I, section 11, of the Oregon Constitution. Defendant advances no argument as to why we should reach a different result under either the Sixth Amendment to the United States Constitution or ORS 135.045. We therefore conclude that the trial court did not err in requiring defendant to proceed to trial without court-appointed counsel.

Affirmed.